# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| v. | 2:02-CR-38-RWS |
| WILLIAM EMMETT LECROY, JR., | 2:08-CV-83-RWS |
| Defendant/Petitioner. | [Capital Case] |

## ORDER

This case comes before the Court on Defendant-Petitioner William Emmett LeCroy, Jr.'s "Motion To Reset Or Modify Execution Date In Order To Implement Court's Order Appointing Counsel" ("Motion") [Doc. 593], filed August 24, 2020, the United States' Response in Opposition [Doc. 598], filed August 28, 2020, and "Notice of Defendant's Submission of Clemency Petition" [Doc. 599], filed August 31, 2020.

LeCroy is a federal death row inmate imprisoned at the United States Penitentiary ("USP"), in Terre Haute, Indiana, which lies within the Southern District of Indiana (and the Seventh Circuit Court of Appeals). LeCroy was prosecuted in the Northern District of Georgia, with the undersigned presiding over the jury trial, including the penalty phase, as well as post-trial litigation and post-

conviction habeas proceedings.  On August 1, 2020, the United States filed a "Notice Regarding Execution Date" advising that the Director of the Federal Bureau of Prisons ("BOP"), upon the direction of the Attorney General, has scheduled the execution of William Emmett LeCroy, Jr., in accordance with 28 C.F.R. Part 26, to take place on September 22, 2020, prompting the instant Motion. [Doc. 591].

In the Motion, counsel for LeCroy assert that the Court should "reset" or "modify" the execution date to allow counsel to fulfill the duties they were appointed to perform pursuant to 18 U.S.C. § 3599.  [Motion at 1].[1]  Lead counsel for LeCroy makes this request based on chronic health conditions and the global COVID-19 pandemic, which, taken together, preclude him from attending the execution as requested by LeCroy.[2]  [Motion at 3-5].  Counsel request that the

---

[1] Defense counsel cite this Court's May 25, 2007 Order ("Appointment Order") [Doc. 479], appointing and assigning counsel the duties of "providing effective legal and investigative assistance to their client in preparation for clemency proceedings and other possible legal challenges, including being present for the client and giving him counsel at the time of his execution."  [Motion at 1-2].

[2] LeCroy has three attorneys of record, John R. Martin ("Lead Counsel" or "Martin"), Sandra Michaels ("Michaels"), who is Martin's spouse, and Stephen Ferrell ("Ferrell") of the Federal Defender Services of Eastern Tennessee, Inc. ("FDSET") (collectively "Counsel").  Ferrell was appointed in January 2019 [Doc. 584] and, thus, has less history with LeCroy than either Martin or Michaels.

execution be postponed until the Spring of 2021 or "until sometime after a vaccine is available" for COVID-19.  [Motion at 6].

The United States opposes the Motion on multiple grounds, including that the Motion, as presently styled, is not properly before this Court.  [Doc. 598]. Alternatively, the United States argues that to grant this relief absent identification of a violation of any constitutional or statutory right or court order would constitute an abuse of discretion.

A hearing was held on September 2, 2020 to provide the parties with an opportunity for oral argument.[3]

Having reviewed the record and considered the arguments of counsel, the Court enters the following Order.

## BACKGROUND

The underlying facts, which are not disputed, are summarized by the Eleventh Circuit's decision of March 2, 2006, affirming the conviction and sentence, and need not be repeated here.  [Doc. 472 – United States v. LeCroy, 441 F.3d 914 (11th Cir. 2006)].  In sum, on October 7, 2001, LeCroy broke into the home of Joann Tiesler, raped and murdered her, and fled in her car to the Canadian

---

[3] The hearing was conducted via Zoom.gov video conferencing consistent with the parties' stated preference.

border, where he was arrested two days later.  He was indicted on a single count of violating 18 U.S.C. § 2119(3) (carjacking), namely, taking a motor vehicle that had been transported, shipped, and received in interstate commerce, with the intent to cause death and serious bodily harm, from the person and presence of Joann Lee Tiesler by force and violence resulting in her death.  [Docs. 1, 32].

The case was tried before a jury in 2004 (February 17, 2004 thru March 10, 2004).  The jury returned a verdict of guilty on March 1, 2004.  [Doc. 398]. Following the penalty phase, on March 10, 2004, the jury issued a special verdict in favor of a death sentence.  [Doc. 414].  The Judgment and Commitment Order ("J&C") was entered pursuant to the jury's special verdict on March 11, 2004. [Doc. 417].  The J&C expressly provided that the Attorney General and United States Marshal "shall make the arrangements for the execution and supervise implementation of the sentence."  [Doc. 417].  LeCroy moved for a new trial and the motion was denied.  [Docs. 420, 445].

On direct appeal, LeCroy's conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals.  [Docs. 448, 472].  His petition for rehearing *en banc* was likewise denied.  [Doc. 473].

LeCroy's post-conviction collateral attack asserting various constitutional challenges to his conviction and sentence was unsuccessful.  On April 22, 2008,

LeCroy filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255.  [Doc. 493].  This Court denied relief following an evidentiary hearing lasting three days.  [Doc. 551].  LeCroy appealed and the appellate court issued a certificate of appealability.  [Docs. 555, 564].  On January 15, 2004, the Eleventh Circuit affirmed this Court's denial of LeCroy's Section 2255 Motion.  [Doc. 573].  The Eleventh Circuit's mandate issued March 17, 2014.  [Doc. 574].

The Court was notified on March 11, 2015, that the Supreme Court denied certiorari, at which time LeCroy's conviction became final.  [Doc. 576].  And see Washington v. United States, 243 F.3d 1299, 1300-01 (11th Cir. 2001).

LeCroy has submitted one prior clemency petition.  [Doc. 598 at 8-9].  In December 2016, LeCroy filed an application for executive clemency.  [Doc. 598, Exhibit 1- Declaration of Kira Gillespie ("Gillespie Declaration") ¶ 5].  On January 20, 2017, LeCroy requested to withdraw his petition, and the Office of the Pardon Attorney administratively closed LeCroy's clemency petition without prejudice on January 24, 2017.  [Gillespie Declaration ¶ 5].

On August 28, 2020, counsel for LeCroy filed a renewed petition for clemency seeking commutation of his death sentence with the Department of Justice's Office of Pardon Attorney.  [Doc. 599].

5

As discussed *supra*, LeCroy has fully exhausted all avenues of relief for asserting substantive challenges to his conviction and sentence.  Procedurally, this case has been in a posture for execution since 2015.  As stated by counsel for the Government during the hearing, for reasons unrelated to LeCroy's case, the Department of Justice resumed capital executions at some point in 2019, and September 22, 2020 is LeCroy's first scheduled date of execution. He filed this Motion shortly after the execution was announced.

## DISCUSSION

LeCroy argues that, under the All Writs Act, 28 U.S.C. § 1651(a) ("AWA"), this Court may (and should) intervene to enforce its Order Appointing Counsel ("Appointment Order"). [Doc. 578, 580].  LeCroy bases his request on the exigent circumstances presented by the coronavirus pandemic, which restricts the ability of his Lead Counsel to attend the execution on September 22, 2020.  LeCroy asks the Court to provide for a delay such that his Lead Counsel may attend the execution.

The Court begins with its authority to reset an execution date.

## I.      Authority to Entertain Defendant's Motion

According to LeCroy, this Court has the authority to reset his execution date in accordance with the Federal Death Penalty Act, 18 U.S.C. §§ 3591, *et seq*. ("FDPA"), and 28 C.F.R. § 26.3(a) to allow for counsel's appointment to be

meaningful.[4] The Court concludes, as a general matter, that it has the authority to fix the date of execution if it chooses to do so.  However, given the posture of the case, the All Writs Act cannot provide redressability for LeCroy.

## A.      The Federal Death Penalty Act

LeCroy was sentenced to death pursuant to FDPA, 18 U.S.C. §§ 3591, *et seq*.  Section 3596 governs implementation of the sentence and provides in part:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. . . .

18 U.S.C. § 3596(a) (1994).  For purposes of Section 3596(a), "the State in which the sentence is imposed" for purposes of § 3596(a) of the FDPA is that of the sentencing court.  United States v. Battle, 173 F.3d 1343, 1350 (11th Cir. 1999); see also United States v. Bourgeois, 423 F.3d 501, 509 (5th Cir. 2005); United States v. Hammer, 121 F. Supp. 2d 794, 798 (M.D. Pa. 2000) (citing 18 U.S.C. § 3595(a) and (c)) ("The term 'imposed' throughout the federal death penalty

---

[4] LeCroy also points to the BOP Execution Protocol.  [Doc. 593 at 7 (citing Roane *et. al*. v. Barr, 1:19-mc-00145-TSC, at 0874, 0883, 0915 (D.D.C. Aug. 30, 2019))].

statute relates to the adjudication by the court and not the actual infliction of the punishment").  Here, imposition of sentence occurred in the State of Georgia, in the Northern District of Georgia.  See O.C.G.A. § 17-10-38(a).

As noted, LeCroy has exhausted the procedures for appeal of the judgment of conviction and for review of his sentence and steps have been taken to implement the sentence.

### B.      Regulations Governing Implementation of Sentence

Subsection (a) of the applicable federal regulation, entitled, "Date, Time, Place, and Method of Execution," reads in pertinent part:

> *Except to the extent a court orders otherwise*, a sentence of death shall be executed: (1) On a date and at a time designated by the Director of the Federal Bureau of Prisons . . . .  If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted[.] . . .

28 C.F.R. § 26.3(a)(1) (2008) (emphasis added).  Similarly, Subsection 26.4(c) speaks to who may be present at the execution and begins with the caveat, "*Except to the extent a court orders otherwise . . . .*"  28 C.F.R. § 26.4(c) (emphasis added).

### C.      Analysis

As an initial matter, the parties agree that the Executive and Judicial Branches share jurisdiction over implementation of the FDCPA sentence, and that Congress does not prescribe the rules for fixing the date of execution.  See

Bucklew v. Precythe, 139 S. Ct. 1112, 1122 (2019); see also Holden v. State of

Minnesota, 11 S. Ct. 143, 147–48 (1890); and see Bourgeois, 423 F.3d at 509.

Based upon the regulation language expressly contemplating Court action

("[e]xcept to the extent a court orders otherwise"), LeCroy argues that an Order

from this Court would supersede any action taken by the Executive Branch; that

the sentencing court's authority is *superior* to the power of the Executive Branch.

On the other hand, the Government contends that "the 'except' clause [within the

1993 regulations] is merely a recognition that both the Judiciary and the Executive

Branch have authority to set a date during the implementation of a capital

sentence" but does not afford the Court unbridled discretion once a date of

execution has been set.   [Doc. 598 at 15].

As stated previously, the Court delegated the authority to implement or carry

out the sentence to the Attorney General in its J&C, which expressly provided that

the Attorney General and United States Marshal "shall make the arrangements for

the execution and supervise implementation of the sentence." [Doc. 417].  That

the Court did not elect to take on the initial responsibility for setting the date of

execution when imposing judgment is significant.  More importantly, the execution

has already been assigned a date certain and set for September 22, 2020 by the

Attorney General.

The Government contends that, once the execution date is set, the only mechanism for delaying execution is by pursuing equitable relief such as seeking a stay of execution or an injunction, which places a higher burden on LeCroy.  See, e.g., Hill v. McDonough, 126 S. Ct. 2096, 2104 (2016).  As discussed in greater detail below, the Government's statement of the law is correct.  If the Court were amenable to LeCroy's request and inclined to "reset" or "modify" the date of execution, granting the requested relief (i.e., continue or postpone execution) would amount to a stay.

Yet, the Motion explicitly denies that LeCroy is seeking a stay or injunction. [Motion at 2, 8].  As noted, LeCroy suggests:

> [A]n order from this Court setting or modifying Mr. LeCroy's execution would not be a stay or an injunction.  Because the Government's regulations are conditioned upon this Court's action, issuance of an order setting a different execution date does not enjoin a government action; it instead renders the BOP date-setting regulations, by their own terms, non-operational.

[Motion at 8 (citing 28 C.F.R. § 26.3; 28 C.F.R. § 26.4)].  In the current posture of the case, with an imminent execution date set, the Court disagrees that setting a different execution date merely "renders BOP date-setting regulations non-operational."

And, as discussed below, LeCroy cannot achieve what he seeks by attempting to invoke the Court's authority under the All Writs Act.

## II.    Defendant LeCroy's Motion to Reset the Execution Date

As stated above, LeCroy's Motion does not seek a stay; instead he seeks for the Court to enforce its Appointment Order through the All Writs Act.

### A.    All Writs Act

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The purpose of the power codified in [Section 1651] is to allow courts 'to protect the jurisdiction they already have, derived from some other source.'" Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1229 (11th Cir. 2005) (citation omitted); see generally Baze v. Parker, 711 F. Supp. 2d 774, 779 (E.D. Ky. 2010) (in context of state clemency proceeding, finding lack of jurisdiction where habeas proceedings had concluded, and noting "[w]ithout the underlying habeas jurisdiction under 28 U.S.C. § 2254, the Court lacks any independent jurisdiction over this litigation, and thus cannot invoke the All Writs Act to grant relief "in aid of [its] respective jurisdiction. . . ."), aff'd, 632 F.3d 338 (6th Cir. 2011). The AWA "is an extraordinary remedy that . . . is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." Schiavo, 403 F.3d 1223 at 1229. (citation and internal quotation marks omitted).

11

### B.  Appointment Order

LeCroy invokes the AWA and asks the Court to enforce its Order Appointing Counsel as his basis for relief. The Court's Appointment Order issued pursuant to Title 18, United States Code, Section 3599, which requires that LeCroy be provided with assistance of counsel "throughout every subsequent stage of available judicial proceedings, . . . [including] applications for stays of execution and other appropriate motions and procedures, . . . competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. §3599(e); see also Harbison v. Bell, 129 S. Ct. 1481, 1486 (2009). LeCroy contends that the statute—and the attendant regulations[5]—require the presence of his choice of counsel—here, Lead Counsel—at the execution itself.

At the hearing, Lead Counsel for LeCroy explained the importance of his presence at the execution.  It is, he contends, the "near-sacred duty of appointed

---

[5] Pursuant to 28 C.F.R § 26.4(c), "[i]n addition to the Marshal and the Warden, the following persons shall be present at the execution:

> (3) Not more than the following numbers of persons selected by the prisoner[, including]:
>
> (ii) Two defense attorneys[.] . . ."

28 U.S.C. § 26.4(c)(3)(ii) (2008).

counsel, particularly appointed counsel who has a long-standing relationship of confidence and trust with the client." [Declaration of Carol A. Wright, Chief of the Capital Habeas Unit for the Middle District of Florida, Doc. 593, Exhibit 2 at ¶¶ 26–27].

Lead Counsel asserts that the exigent circumstances created by the pandemic interfere with his ability to fulfill his professional duties.

### C.      Exigent Circumstances Due to COVID-19

The coronavirus pandemic has significantly altered the judicial operations of the Northern District of Georgia and has created an unusual environment in which the Court seeks to continue its work in new and novel ways, as illustrated by the video hearing held in this case.  Although the Court is learning to adapt, not unlike other agencies, entities, and individuals tasked with essential work, the pandemic presents hardships on all who work within the judicial system.  But to the extent reasonably possible, the work of the judicial system continues.[6]

Evidence has been presented that the BOP is considering accommodations to their modified COVID-19 restricted operations on a case-by-case basis, and that

---

[6] See generally, United States v. Lee, 2020 WL 3921174, at *5 (E.D. Ark. July 10, 2020) (refusing the postpone execution date due to pandemic on distinguishable and less compelling facts; recognizing that Congress has not seen fit to suspend federal executions and declining to substitute its own judgment for that of Executive Branch).

there are alternatives for counsel short of being physically present for in-person meetings at the prison leading up to the date of execution. [Doc. 598, Exhibit 2 – Declaration of Tom Watson ("Watson Declaration")].

However, the record does not include documentation of any specific requests made by counsel to assist in carrying out professional obligations during BOP's modified operations and/or in light of Lead Counsel's health concerns.[7] Significantly, Counsel do not assert that they are unable to pursue relief on LeCroy's behalf and have, in fact, filed a renewed clemency petition and requested oral argument via videoconference. [Doc. 599].

Nevertheless, Lead Counsel requests the Court reset the execution date so that he can fulfill his obligations under the Appointment Order.

**D.      The AWA Does Not Excuse LeCroy From Seeking a Stay**

Invoking the All Writs Act does not excuse a movant from making a showing that a stay or injunction, if sought, is warranted. Dunn v. McNabb, 138 S. Ct. 369 (2017) (quoting Hill, 126 S. Ct. at 2104) (vacating injunction enjoining execution issued by trial court, and stating, "The All Writs Act does not excuse a

---

[7] According to the BOP, the only in-person visit to be scheduled by one of the defense team (Ferrell) was to be accommodated but was cancelled. [Watson Declaration ¶ 5]. Unmonitored video conferencing is also available (since mid-July) and no requests have been made by counsel. [Watson Declaration ¶ 8]. BOP reports that Lecroy has had ten unmonitored telephone calls with counsel since March 2020. [Watson Declaration ¶ 7].

court from . . . finding that [prisoner] has a significant possibility of success on the merits. . . ."); accord Schiavo, 403 F.3d at 1229 ("[T]he All Writs Act cannot be used to evade the requirements for . . . injunctions") (citations omitted).[8]

The Supreme Court teaches that, regardless of the legal vehicle, "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill, 126 S. Ct. at 2104 (state death row inmate seeking to bring constitutional challenge to method of execution as civil rights action pursuant to 42 U.S.C. § 1983 was not entitled to stay of execution as matter of course); accord Grayson v. Allen, 491 F.3d 1318, 1322 (11th Cir. 2007); and see Lee v. Warden USP Terre Haute, 2019 WL 6608724, at *3, 9-11 (S.D. Ind. December 5, 2019) ("standards governing preliminary injunctions apply to motions to stay executions in habeas proceedings") (citations omitted).

---

[8] The Eleventh Circuit's ruling in Schiavo makes clear that, notwithstanding "legal decisions affecting life or death[,] . . . where the relief sought is in essence a preliminary injunction [a stay], the All Writs Act is not available because other, adequate remedies at law exist[.] Schiavo, 403 F.3d at 1226, 1228-29 (refusing to authorize emergency injunctive relief under All Writs Act pending appeal where trial court's denial of injunctive relief – and not overturn medical decision to withdraw life sustaining measures of patient – was not an abuse of discretion and given that likelihood of success on merits was also required under AWA).

"Injunctive relief is an equitable remedy that is not available as a matter of right." Grayson, 491 F.3d at 1322. A stay of execution may be granted only "if the movant establishes that (1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." Long v. Secretary, Dep't of Corr., 924 F.3d 1171, 1176 (11th Cir.) (citing, *inter alia*, Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011)), cert. denied sub nom. Long v. Inch, 139 S. Ct. 2635 (2019); see generally Schiavo, 403 F.3d at 1226 (reiterating that "injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion").

In this case, as is evident from these proceedings, LeCroy has three highly capable attorneys appointed to represent him. The interests being asserted by Lead Counsel for LeCroy and his wish to fulfill his professional and ethical obligation to his client, to honor LeCroy's request that he be present for the execution, are not only sincere but undoubtedly weighty. Counsel's impassioned plea that the Court should reset the execution date in order to accommodate this wish is compelling. To be sure, LeCroy's defense team has earned the respect of the Court.

16

But no matter how Counsel seeks to package it, the factual basis for the Motion and the nature (and effect) of the relief being sought reveal that LeCroy actually seeks a stay of execution.  "[A] stay operates upon the judicial proceeding itself.  It does so either by halting or *postponing* some portion of the proceeding, or by temporarily divesting an order of enforceability."  Nken v. Holder, 129 S. Ct. 1749, 1758 (2009) (recognizing functional overlap and distinctions between an injunction and a stay within context of deciding standard for stay pending judicial review of removal order under alien removal statute) (citation omitted; emphasis provided).  A stay is exactly what LeCroy's Motion requests – he asks the Court to *postpone* his execution in light of the pandemic and limitations of Lead Counsel.  Although presented within a different statutory scheme, in Nken, the Supreme Court rejected the argument that relief was available under the AWA and held that "traditional stay factors" had to be established before relief could be granted. Nken, 129 S. Ct. at 1756-58.

The undersigned, like the Schiavo majority, acknowledges the emotional appeal of Counsel's AWA argument, but is constrained to decide the issue based on the controlling law.  The Court concludes that what LeCroy actually seeks in his Motion is a stay of execution.  He seeks this relief because of the pandemic and the fact that his longest-serving Lead Counsel and attorney of choice cannot be

17

physically present for the execution in this environment.  The Court believes

LeCroy's Motion and Counsel's request to be genuine and compelling.

However, LeCroy has no pending habeas action, and his clemency petition is

before the Department of Justice's Office of Pardon Attorney, also part of the

Executive Branch.  In addition, LeCroy has not moved for a stay of execution and

has not attempted to satisfy the traditional criteria for imposing a stay.

As discussed *supra*, the All Writs Act does not confer jurisdiction not

otherwise established.  Because the Court cannot reconcile LeCroy's claim (that

the requested relief would not amount to stay of execution) with the controlling

law, and because LeCroy has not moved for a stay, LeCroy's request is not

redressable by The All Writs Act.[9]

If relief is ultimately sought by LeCroy via the appropriate vehicle and

presented in a proper forum, the arguments advanced here may yield a different

result.[10]

---

[9] Given its ruling, the Court need not reach or discuss LeCroy's arguments under 28 U.S.C. § 26.4(c) and O.C.G.A. § 17-10-41.

[10] The Court is not convinced that Defendant's request does not solely implicate execution of the sentence and require a habeas action in the Southern District of Indiana. "[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under [28 U.S.C.] § 2241. Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008) (citing Bishop v. Reno, 210 F.3d 1295, 1304 (11th Cir. 2000)).

## CONCLUSION

For all of these reasons, it is hereby **ORDERED** that the Defendant

LeCroy's "Motion To Reset Or Modify Execution Date In Order To Implement

Court's Order Appointing Counsel" [Doc. 593] is **DENIED**.

**SO ORDERED** this 4th day of September, 2020.

_____
**RICHARD W. STORY**
United States District Judge

19