**DEATH PENALTY CASE**
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

## CASE NO. 20-13353-P

_____

WILLIAM EMMETT LECROY, JR.,
Appellant/Petitioner,

v.

UNITED STATES OF AMERICA,
Appellee/Respondent.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, GAINESVILLE DIVISION

_____

## INITIAL BRIEF FOR THE APPELLANT

_____

JOHN R. MARTIN
Martin Brothers, P.C.
Georgia Bar No.  473325
1099 St. Louis Pl.
Atlanta, GA  30306
(404) 433-7446
jack@martinbroslaw.com

SANDRA MICHAELS
Georgia Bar No.  504014
965 Virginia Avenue, N.E.
Atlanta, GA 30306
(404) 312-5781
SLMichaelsLaw@gmail.com

STEPHEN FERRELL
Federal Defender Services of Eastern
Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
Ph:  (865) 637-7979
Stephen_Ferrell@fd.org

**Attorneys for Appellant**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

WILLIAM EMMETT LECROY, JR.,    *
                                *
    Appellant/Petitioner,        *
                                *
v.                              *        CASE NO. 20-13353-P
                                *
                                *
UNITED STATES OF AMERICA        *
                                *
    Appellee/Respondent.         *

## CERTIFICATE OF INTERESTED PERSONS

The Appellant certifies that the following persons have an interest in the outcome of the instant appeal:

Carolyn Cain Burch – Appellee's counsel

Stephen Ferrell – Appellant's counsel

William Emmett LeCroy, Jr. – Appellant

John R. Martin – Appellant's counsel

Scott Meisler – Appellee's counsel

Sandra Michaels – Appellant's counsel

Richard W. Story – District Court Judge

Joann Tiesler – Victim

i

## CERTIFICATION OF TYPE SIZE AND STYLE

Pursuant to Eleventh Circuit Rule 28-2(d), Appellant certifies that this Brief is typed in 14 point Times New Roman.

ii

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant William Emmett LeCroy, Jr. requests oral argument in this death penalty case. This case raises an important issue of first impression regarding the authority of the District Court to exercise its discretion under the All Writs Act in granting Appellant's Motion to Reset or Modify the Execution Date in Order to Implement the Court's Order Appointing Counsel.  The District Court indicated in its Order sympathy for the Appellant's requested relief but nevertheless believed that it lacked the authority under the All Writs Act to grant this relief.  This was error.

Appellant LeCroy asserts the District Court has the authority, under the All Writs Act to exercise its informed discretion to modify Appellant's execution date so that counsel appointed can represent Appellant through and including his execution as required by their legal and ethical obligations.

**TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ................................................. i

CERTIFICATE OF TYPE SIZE AND STYLE .................................................. ii

STATEMENT REGARDING ORAL ARGUMENT........................................ iii

TABLE OF CONTENTS ................................................................... iv

TABLE OF CITATIONS ................................................................... vi

STATEMENT OF JURISDICTION.................................................... xi

STATEMENT OF THE ISSUES.......................................................... 1

STATEMENT OF THE CASE........................................................... 2

      A.    COURSE OF PROCEEDINGS…………………………………….. 2

      B.    FACTS……………………………………………………………… 3

      C.    STANDARD OF REVIEW............................................................. 6

SUMMARY OF THE ARGUMENT.................................................... 7

ARGUMENT AND AUTHORITY...................................................... 8

      A. WHETHER THE DISTRICT COURT HAS THE AUTHORITY UNDER THE ALL WRITS ACT TO MODIFY APPELLANT'S EXECUTION DATE TO ENFORCE ITS ORDER APPOINTING COUNSEL………………………………………………………..8

          1.    The request to reset the execution date is not a stay of execution. 8

          2.  The District Court retains jurisdiction of the case until the sentence of execution is carried out.  An Order under the All Writs Act is the proper vehicle for the District Court to ensure its Order appointing

counsel is effectively carried out………………………………12

   B.  EVEN AFTER DELEGATION OF AUTHORITY, THE DISTRICT COURT RETAINS DISCRETION TO SUPERCEDE ANY DATE SET BY THE EXECUTIVE BRANCH IN MATTERS RELATING TO THE EXECUTION OF A SENTENCE, AND THEREFORE HAS THE DISCRETION TO MODIFY THE EXECUTION DATE……….17

 CONCLUSION........................................................................................... 19

CERTIFICATE OF COMPLIANCE                                       21

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

**CASES**                                                                                    **PAGE**

*Adams v. United States,* 317 U.S. 269 (1942)……………………………………19

*Bradley v. King,* 556 F.3d 1225, 1229 (11th Cir. 2009)…………………….6

*Dunn v. McNabb,* 138 S.Ct. 369 (2017)…………………………………….14

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)………….14, 15

*McFarland v. Scott,* 512 U.S. 849 (1994)…………………………………..12

*Nken v Holder,* 556 U.S. 418 (2009)………………………………………….9, 10, 11

*Panetti v. Quarterman*, 551 U.S. 930 (2007)…………………………………..13

*Roane et. al. v. Barr,* 1:19-mc-00145-TSC at 0874, 0883, 0915
(D.D.C. Aug. 30, 2019)…………………………………………………………18

*Root v. Woolworth,* 150 U.S. 401 (1893)…………………………………………17

*Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223 (11th Cir. 2005)………15, 16

*United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006)…………………… 2

*United States v. LeCroy*, 550 U.S. 905 (2007)…………………………….. .2

## STATUTES

18 U.S.C. § 3596(a)……………………………………………………………4

18 U.S.C. § 3599…………………………………………………7, 9, 12, 14, 15

18 U.S.C. §3599(a)(2)……………………………………………………………4

18 U.S.C. § 3599(e)…………………………………………………………..13

28 U.S.C. § 1561(a)……………………………………………………………12

28 U.S.C. § 2253(a)……………………………………………………………i x

28 U.S.C. § 2255……………………………………………………………… 2

## OFFICIAL CODE OF GEORGIA ANNOTATED

O.C.G.A. § 17-10-41……………………………………………………4

## OTHER

## C.F.R.:

28 C.F.R. § 26…………………………………………………………2

28 C.F.R. § 26.3……………………………………………………..19

28 C.F.R. § 26.3(a)…………………………………………………7, 17

28 C.F.R. § 26.4……………………………………………………17, 19

28 C.F.R. § 26.4(b) and (c)…………………………………………4

## Eleventh Circuit Rules:

Rule 28-2(d)…………………………………………………………..    ii

## Federal Rules of Criminal Procedure:

## Federal Rules of Appellate Procedure:

Rule 32(a)(7)……………………………………………………….

## Docket Entries:

Doc. 1…………………………………………………………………2, 3
Doc. 39-1……………………………………………………………18
Docs. 398, 414, 417………………………………………………2
Docs. 472, 473 and 474……………………………………………2
Docs. 477, 478, 479………………………………………………3
Doc. 551…………………………………………………………2
Doc. 584…………………………………………………………3
Doc. 591…………………………………………………………2
Doc. 593…………………………………………………………2, 4

Doc. 598, 599…………………………………………………………………….2
Doc. 607……………………………………………………………………..3, 4
Doc. 601…………………………………………………………………….3, 7
Doc. 602……………………………………………………………………3

**Federal Rules of Appellate Procedure**

Fed.R.App.P. 32(a)(7)……………………………………………………21

**Miscellaneous:**

Dr. Anthony Fauci & CDC Director Senate Testimony Transcript May 12 at 32:06-32:41, Rev (May 12, 2020), https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12. ……………………….11

## STATEMENT OF JURISDICTION

The Eleventh Circuit Court of Appeals has jurisdiction to consider this appeal, pursuant to 28 U.S.C. §2253(a), in that this is the direct appeal of a final Order  rendered by the United States District Court for the Northern District of Georgia.

## STATEMENT OF THE ISSUES

A.  WHETHER THE DISTRICT COURT HAS THE AUTHORITY UNDER THE ALL WRITS ACT TO MODIFY APPELLANT'S EXECUTION DATE TO ENFORCE ITS ORDER APPOINTING COUNSEL.

1.  The request to reset the execution date is not a stay of execution.

2.  The district court retains jurisdiction of the case until the sentence of execution is carried out.  An order under the all writs act is the proper vehicle for the district court to ensure its order appointing counsel is effectively carried out.

B.  EVEN AFTER DELEGATION OF AUTHORITY, THE DISTRICT COURT RETAINS DISCRETION TO SUPERCEDE ANY DATE SET BY THE EXECUTIVE BRANCH IN MATTERS RELATING TO THE EXECUTION OF A SENTENCE, AND THEREFORE HAS THE DISCRETION TO MODIFY THE EXECUTION DATE.

1

**STATEMENT OF THE CASE**

**A.    COURSE OF PROCEEDINGS**

Appellant William Emmett LeCroy, Jr. (hereinafter referred to as the "Appellant" or "Mr. LeCroy") was tried before a jury on an Indictment charging carjacking, where the victim, Ms. Joann Lee Teisler, was killed. (Doc.1). He was convicted and sentenced to death. (Docs. 398, 414, 417). This Court denied his direct appeal, *United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006), and the Supreme Court denied his petition for a writ of certiorari. *United States v. LeCroy*, 550 U.S. 905 (2007).  (Docs. 472, 473, 474).   The Court further denied Mr. LeCroy's request to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody Pursuant to 28 U.S.C. §2255 (Doc. 551).

On August 1, 2020, the United States filed a "Notice Regarding Execution Date" advising that the Director of the Federal Bureau of Prisons ("BOP"), upon the direction of the Attorney General, has scheduled the execution of William Emmett LeCroy, Jr., in accordance with 28 C.F.R. § 26, to take place on September 22, 2020.  (Doc. 591).  Appellant then filed Petitioner's Motion to Reset or Modify Execution Date In Order To Implement the Court's Order Appointing Counsel.  (Doc. 593).  The Government filed its Response in Opposition as well as a copy of Appellant's submission of his Clemency Petition.  (Docs. 598, 599).

The District Court conducted a hearing on the motion on September 2, 2020,

via Zoom, where it heard arguments. (Doc. 607). On September 4, 2020, the District Court entered its Order denying Mr. LeCroy's Motion to Reset the Execution Date, holding that it did not have the authority, under the All Writs Act, to stay the execution. (Doc. 601). The District Court found however, the request to reset the execution date was "genuine and compelling," indicating the District Court was inclined to grant the request if it believed it had the authority to do so. (Doc. 601, p. 18). This appeal followed. (Doc. 602)

## B.    FACTS

Mr. LeCroy was prosecuted in the Northern District of Georgia for a capital murder. (Doc. 1). He was convicted and sentenced to death. (Docs. 472, 473, 474). On May 25, 2007 the District Court appointed undersigned counsel John R. Martin and Sandra Michaels to represent Mr. LeCroy in all post conviction proceedings. (Docs. 477, 478, 479). Mr. Martin was appointed as lead counsel. (Doc. 479). In 2019, Stephen Ferrell of Federal Defender Services of Eastern Tennessee was appointed as additional counsel in support of previously appointed counsel. (Doc. 584). The appointments were made pursuant to 18 U.S.C. § 3599, which, among other things, holds that Mr. LeCroy is entitled to assistance from his attorneys "throughout **every** subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all

3

available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant."   18 U.S.C. § 3599 (a) (2). (emphasis added).

Mr. Martin was diagnosed in 2010 with a form of leukemia that is believed to be caused by his exposure to Agent Orange during his service in Vietnam. (Doc. 593, Ex.1) (Doc. 607, p. 6-8).   Because of the worldwide pandemic of COVID-19, he is, on directions of his physician, unable to travel, and due to his severely compromised immune system, he should not be around groups of people. This serious health condition is thus compounded by the pandemic and could result in death or severe illness if Mr. Martin is exposed to and contracts COVID-19.

Mr. LeCroy has specifically indicated he wanted his long time lead attorney, Mr. Martin, present at his execution.   (Doc. 607, pp. 8-11).   This is Mr. LeCroy's right under Georgia law which federal law requires to be followed at any execution and Bureau of Prison regulations. (O.C.G.A. § 17-10-41). (18 U.S.C. § 3596 (a)). (28 C.F.R. § 26.4 (b) and (c)).   Under the appointment pursuant to 18 U.S.C. § 3599 (a) (2), Mr. Martin has a legal and ethical obligation to travel to Terre Haute, Indiana, where the execution is to occur and enter the prison to be present at the execution or to be present during the days leading up to his execution, an

4

obligation that is impossible for him to perform due to the extraordinary situation created by the pandemic.   (Doc. 607, pp. 6-11).

On August 1, 2020, the United States filed a "Notice Regarding Execution Date" advising that the Director of the Federal Bureau of Prisons ("BOP"), upon the direction of the Attorney General, has scheduled the execution of Appellant, in accordance with 28 C.F.R. § 26, to take place on September 22, 2020.  Appellant's counsel filed a Motion to Reset the Execution date to a future date when lead counsel Martin would be able to travel and consult with Appellant and to be present at the execution until the extraordinary circumstances caused by the global COVID-19 pandemic have subsided.

As counsel explained at the hearing before the District Court, his past experience with a previous execution brought home to him the importance of counsel being available to consult with and comfort a death sentenced defendant prior to and during the execution.  Counsel can inform him about any outstanding legal challenges if still viable and assure him that everything has been done on his behalf.  Counsel can be a sounding board for the defendant's fears and listen to his requests.  He can assure the defendant that he will communicate any messages he has to family, loved ones and supporters.  After a long relationship with the defendant, as Mr. Martin has had with Mr. LeCroy, he can judge the defendant's mental status based upon a base line with the defendant, in order to raise any

5

mental health issues related to the execution. But most important of all he can console the defendant at this terrible hour. And at the execution he can guarantee that the execution goes forward properly and be the one friendly face in a crowd of hostile witnesses to connect with during those last terrible moments. At the previous execution counsel worried about whether he should actually attend the execution but left understanding how important his role as counsel was at what is actually the last proceeding.

## C.    STANDARD OF REVIEW

Because Appellant is challenging the correctness of legal findings by the District Court, those findings must be reviewed de novo. Any findings of fact by the District Court, if challenged, must be given deference and only overturned if they are clear error. *Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009).

## SUMMARY OF THE ARGUMENT

While conceding that counsel's role in advising and comforting the Appellant on the eve of and during his execution is "undoubtedly weighty" and "compelling", (Doc. 601, p. 16), the District Court nevertheless declined to reset the execution date so that counsel can be present because of its conclusions that the Motion filed was in essence a motion for stay of execution. It also ruled that it did not have the authority to change the date set by the Attorney General.

However, Appellant LeCroy asserts the District Court has the authority to modify the date of the execution of Appellant LeCroy pursuant to 28 C.F.R. § 26.3 (a) as well as under the All Writs Act. The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Here, there is no statute that addresses the issue of when a global pandemic prevents meaningful representation of counsel pursuant to their legal obligations required by their appointment under 18 U.S.C. § 3599. The All Writs Act, however, empowers federal courts to fashion extraordinary remedies to enforce their orders when the needs arise and justice so requires and there is no other effective remedy. Here, the extraordinary circumstances which exist due to the COVID-19 pandemic authorize the District Court either to reset or continue the date of the execution to a time certain in the Spring of 2021 when the effects of the pandemic have subsided in order for counsel to fulfill their legal obligations to the Appellant during and prior

7

to his execution.

<u>**ARGUMENT AND AUTHORITY**</u>

A.  **THE DISTRICT COURT HAS THE AUTHORITY UNDER THE ALL WRITS ACT TO MODIFY APPELLANT'S EXECUTION DATE TO ENFORCE ITS ORDER APPOINTING COUNSEL.**

The District Court in this case found that lead counsel's request to move Mr. LeCroy's execution date so that he could fulfill his appointed obligation to be present at the execution to be "not only sincere but undoubtedly weighty." <u>Order at 16</u>. It nonetheless denied the requested relief because it found that "no matter how Counsel seeks to package it, the factual basis for the Motion and the nature (and the effect) of the relief being sought reveal that LeCroy actually seeks a stay of execution." <u>Order at 17</u>. This erroneous interpretation of Counsel's request dictated the District Court's decision so that this Court must now correct that error and remand the issue to be decided by the District Court under the correct legal standard.

**1. The request to reset the execution date is not a stay of execution.**

As Counsel argued in the court below, Mr. LeCroy is not seeking a stay of execution or a traditional injunction. No other litigation or request for relief related to this Motion is pending nor needs to be resolved. Thus, Mr. LeCroy cannot meet the standards for a stay of execution because he cannot show any

8

likelihood of success on the merits.  There are simply no other merits to be decided, therefore, the District Court's characterization of Appellant's request is error.

By asking to move the execution date so that lead counsel would be able to fulfill his duties to Mr. LeCroy as appointed counsel under 18 U.S.C. § 3599, he is not asking that the execution be put on hold so that the Court may review other requests.  Rather, he is requesting that the District Court reset his execution date within a matter of a few months so that lead counsel may avail himself of a vaccine against COVID-19 that is projected to be available by the end of the calendar year. The request is finite and based on the extraordinary pandemic now affecting so many areas of American life.

The District Court erroneously applied language from the Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418, (2009) to deny counsel's motion.  Order at 17.  However, that case actually supports Mr. LeCroy's motion that he is not seeking a stay or a traditional injunction.

In *Nken*, Chief Justice Roberts provided detailed and precise definitions of what constitutes an injunction and a stay.  An injunction is "a means by which a court tells someone what to do or not to do."  However, the Court also recognized the fact that "in a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process

9

or mandate operating in personam." *Id*. at 428 (quoting Black's Law Dictionary 800 (6th ed.1990), quoting H. Joyce, A Treatise on the Law Relating to Injunctions § 1, pp. 2–3 (1909)).  While an injunction operates as an order directed to one of the parties, the Court noted that a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding.  *Id*. at 428.  However, both have the practical effect of preventing some action before the legality of that action has been conclusively determined.  *Id*.  This common attribute of both a stay and an injunction was pointedly missing from the Motion presented to the court below and, for that reason, the request was for neither a stay nor a traditional injunction.

The issuance of an order setting a different execution date would not enjoin the government from executing Mr. LeCroy.  It would not delay the process so that the legality of some other action could be conclusively determined. Again, Mr. LeCroy has not advanced any such issue in the District Court here.  Rather, resetting of the date would simply move this same event already scheduled to take place to a different date in order to ensure appointed counsel's ability to fulfill his appointed duties.

While such an order would inevitably "postpone" the event, as found by the District Court, it would not do so by "temporarily divesting [the] order of enforceability."  Order at 17, citing *Nken*, 556 U.S. at 428.  The death sentence

10

along with its new execution date would remain fully enforceable. It would simply be enforced at a date that would allow lead counsel to carry out his duties under the court's order appointing him. Furthermore, the requested modification of the execution date would necessarily be short in duration. As announced by the director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci, there is a good chance the United States will have an effective vaccine by the end of 2020 or very early 2021. *Dr. Anthony Fauci & CDC Director Senate Testimony Transcript May 12* at 32:06-32:41, Rev (May 12, 2020), https://www.rev.com/blog/transcripts/dr-anthony-fauci-cdc-director-senate-testimony-transcript-may-12.

Because Mr. LeCroy's request was one of moving the date based on extraordinary factual circumstances, it was not properly characterized as a motion for a stay. As counsel argued in the District Court, the request was more akin to a request to change a trial date because counsel would not be able to perform their appointed duties at the date originally set by the court. The setting of an execution date in the middle of a worldwide pandemic when appointed counsel is under strict orders to avoid the risk of infection due to a serious chronic illness, as here, presented the District Court with extraordinary circumstances. But, these circumstances could not affect the legality of the execution. At the same time, they would allow appointed counsel to fulfill his duties at the specified time. Resetting

11

the date would allow for the execution to take place while still ensuring that the lead appointed counsel could effectively represent Mr. LeCroy as he was appointed to do.

> **2. The District Court retains jurisdiction of the case until the sentence of execution is carried out.  An Order under the All Writs Act is the proper vehicle for the District Court to ensure its Order appointing counsel is effectively carried out.**

Ensuring counsel's ability to carry out their duties during the execution was entirely within the District Court's jurisdiction pursuant to its lawful order of appointment.  The District Court unquestionably has authority to appoint counsel to represent a death-sentenced inmate through execution of sentence. The All Writs Act, 28 U.S.C. § 1651(a), (the AWA) gives the Court the authority to modify Mr. LeCroy's execution date so that counsel may fully comply with the appointment order.   This is because, under the AWA, the District Court is permitted to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The District Court's erroneous conclusion that it lacked this power merits reversal.

Congress has provided for the statutory right to counsel in death penalty cases.  18 U.S.C. § 3599.  "On its face, this statute grants indigent defendants a mandatory right to qualified legal counsel."  *McFarland v. Scott*, 512 U.S. 849, 854 (1994).  Under this statute, the District Court appointed John Martin as lead counsel. This appointment under the statute explicitly includes clemency

12

proceedings.  18 U.S.C. § 3599(e).  At the present time, clemency proceedings are ongoing and may only be resolved shortly before execution.  In addition, Georgia law and BOP regulations provide for the presence of counsel at a condemned inmate's execution.

Counsel's presence at the execution is not merely for emotional support of the prisoner, it is one of his appointed duties.  First, counsel has a duty to ensure that their client is mentally competent to proceed with execution.  *See Panetti v. Quarterman*, 551 U.S. 930, 935-36 (2007) (Eighth Amendment prohibits execution of inmate who is incompetent, even if earlier assessments found him competent).  Second, counsel's presence is necessary in protecting their client's First Amendment rights to access to religious counseling and services, as well as ensuring that he is allowed to express himself in his last wishes and final words.  And finally, counsel's presence at the execution is necessary in case potential legal violations occur. In a botched 2014 execution, for example, the presence of counsel was critical to the prisoner's gaining access to the courts through an emergency petition when the execution drugs failed to bring about death, leaving him gasping for air for nearly two hours.[1] For all of these reasons, counsel's ability to be present

---

1 *See* Berman, *Arizona execution lasts nearly two hours; lawyer says Joseph Wood was 'gasping and struggling to breathe,'* Wash. Post (July 23, 2014), https://www.washingtonpost.com/news/postnation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/.

physically with their client is absolutely necessary in fulfilling the obligations this Court appointed them to do.

Despite counsel's inability to fulfill these duties, the District Court erroneously held that the AWA did not give it the authority to move the execution date unless Mr. LeCroy could make a showing that a stay or injunction is warranted. Order at 14, citing *Dunn v. McNabb*, 138 S.Ct. 369 (2017). However, cases from this Court demonstrate that when a movant is invoking the All Writs Act outside the normal framework of asking for a stay or traditional injunction so that other legal proceedings can be had, an order under the Act is appropriate.

The AWA is the proper vehicle for granting the relief requested by Mr. LeCroy because he did not premise that request on the resolution of some other legal proceeding. "Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1100 (11th Cir. 2004). Thus, the AWA codifies the "federal courts' traditional, inherent power to protect the jurisdiction they already have." *Id.* at 1099. In this case, the jurisdiction the court would be protecting through the AWA is its authority to appoint counsel under 18 U.S.C. § 3599.

Because the District Court must continue to exercise its authority to appoint counsel under 18 U.S.C. § 3599, it also has authority to see that any such order is

14

effectively carried out in all of its particulars.  Federal courts have "both the inherent power and the *constitutional obligation* to protect their jurisdiction ... to carry out Article III functions." *Procup v. Strickland,* 792 F.2d 1069, 1074 (11th Cir.1985) (en banc) (emphasis added). Toward that end, the All Writs Act permits federal courts to protect their jurisdiction with regard to "not only ongoing proceedings, but potential future proceedings." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1099 (11th Cir.2004) (internal citations omitted).  Ensuring counsel's ability to carry out their duties during the execution is entirely within the District Court's jurisdiction pursuant to its lawful order of appointment.  Under the All Writs Act, the authority for the Court to appoint counsel to represent Mr. LeCroy through execution of sentence carries with it the authority for the Court to modify the execution date so that counsel may fully comply with the Court's Order.

The District Court erroneously relied on this Court's opinion in *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005) to deny relief under the AWA.  Order at 15.  However, that case is readily distinguishable because the result in *Schiavo* was dictated by the fact that the injunction requested was much more like a traditional injunction than an operation of the AWA.  The *Schiavo* Court held that, "[o]ur decisions make clear that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other,

15

adequate remedies at law exist, namely Fed.R.Civ.P. 65, which provides for temporary restraining orders and preliminary injunctions." *Id.* at 1229. Relief was denied because this Court found the plaintiffs in *Schiavo* were seeking "an emergency injunction pending appeal" making this "a textbook example of using the All Writs Act to circumvent the requirements for a preliminary injunction." *Id.* However, the case at bar can be readily distinguished from *Schiavo*.

Authority under the AWA would be appropriately exercised here because Mr. LeCroy has no other remedy at law. He cannot obtain a stay because he can never show a likelihood of success on the merits when there are no merits to be resolved. There is no alternative remedy for the Court to protect its authority to ensure that appointed counsel may effectively carry out their duties. For this reason, the District Court had jurisdiction to reset Mr. LeCroy's execution date under the AWA. Its holding that it did not must be reversed.

16

**B.  EVEN AFTER DELEGATION OF AUTHORITY, THE DISTRICT COURT RETAINS DISCRETION TO SUPERCEDE ANY DATE SET BY THE EXECUTIVE BRANCH IN MATTERS RELATING TO THE EXECUTION OF A SENTENCE, AND THEREOFRE HAS THE DISCRETION TO MODIFY THE EXECUTION DATE.**

The District Court that sentenced Mr. Lecroy to death retains jurisdiction to enforce its judgment. *Root v. Woolworth*, 150 U.S. 401, 412 (1893) ("Where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution.").  Even though the District Court delegated that authority to the Executive Branch, it still retains control over the enforcement of its orders.  Thus, any decision from the District Court to modify Mr. Lecroy's execution date necessarily takes precedence over the original date set by the Attorney General.

The language of the regulation that gave the Court the ability to delegate the date setting function shows that the District Court controls (and supersedes) any action by the executive branch. In fact, the language of the regulations shows that a court order from the District Court would render the pertinent regulation inoperative. *See e.g.* 28 C.F.R. § 26.3(a) ("Except to the extent a court orders otherwise," the Attorney General may select the date, time, place and method of the execution); 28 C.F.R. § 26.4 ("Except to the extent a court orders otherwise," BOP may give notice of execution to prisoner and regulate access to attorneys, family and spiritual advisors) (emphasis added).  This language specifically subordinates decisions by the BOP to Orders from the District Court that passed

17

sentence on Mr. LeCroy.

Likewise, both the BOP Execution Protocol and the July 2019 Addendum to the BOP Execution Protocol similarly recognize that sentencing courts retain the power to set dates. For example, in connection with "establishing an execution date," it is acknowledged that the Director of the BOP is authorized to move forward with setting an execution date only after "the sentencing judge signs the appropriate Judgment and Order" and, again, "except to the extent a court orders otherwise." The Protocol provision relating to the Warden's notification of the death-sentenced prisoner, likewise, states that "If the execution date is set by a judge, the Warden will notify the condemned individual, in writing, as soon as possible." In connection with news media access to witnessing the execution, the Protocol describes a process for media representatives to be notified after "an execution date is set by the court/Director of the BOP"; and, as the more recent Addendum to the Protocol recognized, the "procedures utilized by the BOP to implement federal death sentences" could be modified at the discretion of the Director as necessary in order to "comply with specific judicial orders." *See* Doc. 39-1, Administrative Record, *Roane et. al. v. Barr*, 1:19-mc-00145-TSC, at 0874, 0883, 0915 (D.D.C. Aug. 30, 2019) (emphasis added).

Because the Government's regulations are conditioned upon the District Court's action, issuance of an order setting a different execution date would not

18

enjoin a government action. Rather, it would render the BOP date-setting regulations, by their own terms, non-operational. *See* 28 C.F.R. § 26.3; 28 C.F.R. § 26.4.

Even where the Attorney General has set a date of execution based on the District Court's delegation of authority, the District Court must retain the power to change that date when it finds that the ends of justice require it. An order from the court under the AWA is proper "to achieve the ends of justice entrusted to it." *Adams v. United States,* 317 U.S. 269, 273, (1942). The District Court must oversee all aspects of the enforcement of its orders and must remain the arbiter of what is fair and just amongst the parties. For this reason, all of the date-setting authority allowed to the BOP must be subject to the judgment of the District Court that issued the sentence of death and must ensure that its implementation is carried out within the bounds of federal law and the federal constitution. Where the ends of justice require the Court to move the date so that counsel may effectively represent a condemned inmate at the last proceeding in this case, the AWA gives the Court that power.

## CONCLUSION

Based on the factual and legal contentions herein, the Defendant respectfully requests that the Court remand this matter to the District Court to reconsider its decision in light of this opinion. As the District Court concluded, the role of

19

counsel at the time of execution is "undoubtedly weighty" and "compelling".  The AWA is the appropriate vehicle to ensure that counsel can be present for this important duty.

This 11th day of September, 2020.

Respectfully submitted,

BY:   /s/ John R. Martin
        John R. Martin
        1099 St. Louis Pl
        Atlanta, Georgia  30306
        Ph: (404) 433-7446
        jack@martinbroslaw.com
        *Attorney for Petitioner William Lecroy, Jr.*

        /s/Sandra Michaels
        Sandra Michaels
        965 Virginia Avenue NE
        Atlanta, Georgia 30306
        Ph: (404) 312-5781
        SLMichaelsLaw@gmail.com

        /s/Stephen Ferrell
        Stephen Ferrell
        Federal Defender Services of Eastern Tennessee, Inc.
        800 South Gay Street, Suite 2400
        Knoxville, TN  37929
        Ph:  (865) 637-7979
        Stephen_Ferrell@fd.org


**ATTORNEYS FOR
APPELLANT LECROY**

20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed.R.App.P. 32(a)(7), I certify that the number of words in this brief, as counted by my word-processing system, is 4,374 words.

<u>s/John R. Martin</u>
John R. Martin

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, the foregoing **INITIAL BRIEF FOR THE APPELLANT** was filed electronically. Service was made upon Filing Users through the CM/ECF Electronic Filing System.

/s/ John R. Martin
John R. Martin