**CAPITAL CASE – EXECUTION DATE SEPTEMBER 22, 2020**

**No. 20-13353**

---

# In the United States Court of Appeals for the Eleventh Circuit

---

**UNITED STATES OF AMERICA,**
**APPELLEE,**

**V.**

**WILLIAM EMMETT LECROY, JR.,**
**APPELLANT.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

---

**BRIEF FOR THE UNITED STATES**

---

BYUNG J. PAK
  United States Attorney

CAROLYN "TIPPI" CAIN BURCH
  Assistant U.S. Attorney
  Northern District of Georgia

BRIAN C. RABBITT
  Acting Assistant Attorney General

ROBERT A. ZINK
  Acting Deputy Assistant Attorney General

SCOTT A.C. MEISLER
PAUL T. CRANE
  Criminal Division, Appellate Section
  U.S. Department of Justice
  950 Pennsylvania Ave. NW, Room 1264
  Washington, DC 20530
  (202) 307-3803
  scott.meisler@usdoj.gov
  paul.crane@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS
*United States of America v. William Emmet LeCroy, Jr.*
No. 20-13353

Undersigned counsel for the United States of America hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case:

Borucki, Jane Swift, Former Assistant United States Attorney

Burby, Joey, Former Assistant United States Attorney

Burch, Carolyn "Tippi" Cain, Assistant United States Attorney

Cole, Susan S., Former United States Magistrate Judge

Crane, Paul T., Attorney, Appellate Section, DOJ Criminal Division

Dingle, Shanya, Former Assistant United States Attorney

Duffey, Honorable, William S., Jr., Former United States Attorney

Evans, Honorable Orinda D., United States District Court Judge

Ferrell, Stephen Allen, counsel for Appellant

Fuller, Honorable J. Clay, United States Magistrate Judge

Horn, John A., Former United States Attorney

Kearns, Stephanie Ann, Former counsel for Appellant

Kish, Paul Stephen, Former counsel for Appellant

LeCroy, Jr. William Emmett, Appellant

Martin, John R., counsel for Appellant

C-1 of 3

McBath, J. Elizabeth, Assistant United States Attorney

McKinnon, Jr., William, Former Assistant United States Attorney

Meisler, Scott A.C., Attorney, Appellate Section, DOJ Criminal Division

Mendelsohn, Brian, Former counsel for Appellant

Michaels, Sandra, counsel for Appellant

Nahmias, Honorable, David E., Former United States Attorney

Pak, Byung J., United States Attorney

Queen, Roger Glenn, Former Assistant United States Attorney

Smith, Thomas Corley, Former counsel for Appellee

Sommerfeld, Lawrence R., Former Assistant United States Attorney

Story, Honorable Richard W., United States District Court Judge

Strippoli, Sandra E., Assistant United States Attorney

Summer, Daniel A., Former counsel for Appellant

Tiesler, Joann, Victim

United States of America, Appellee

Vineyard, Honorable, Russell, Former Assistant United States Attorney

Weathersby, Rise Hegwood, Former counsel for Appellant

Weil, Amy L., Former Assistant United States Attorney

Yates, Sally Quillian – Former United States Attorney

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

s/ Scott Meisler
SCOTT A.C. MEISLER
Counsel for United States

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes that the facts and legal arguments are adequately presented in the briefs and record and that oral argument would not significantly assist the Court's decisional process. Fed. R. App. P. 34(a)(2)(C). In addition, because appellant's execution is scheduled for September 22, 2020, oral argument may unnecessarily delay resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... C-1

STATEMENT REGARDING ORAL ARGUMENT....................................i

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ................................................................................... 1

JURISDICTIONAL STATEMENT...........................................................3

STATEMENT OF THE ISSUES .................................................................4

STATEMENT OF THE CASE.....................................................................5

    I.     Legal Background.........................................................................5

    II.    Factual and Procedural History ................................................ 10

        A.    LeCroy's Conviction And Death Sentence Are Affirmed On Appeal And Collateral Review.................... 10

        B.    After A Hearing, The District Court Denies LeCroy's Motion To Modify The September 22, 2020 Execution Date........................................................................................ 14

SUMMARY OF ARGUMENT.................................................................. 16

STANDARD OF REVIEW ....................................................................... 18

ARGUMENT .......................................................................................... 19

    I.     The District Court Correctly Determined That LeCroy's Motion Sought Either A Stay Of Execution Or An Injunction And That Relief Was Not Available Under The All Writs Act ............................................................................... 19

        A.    LeCroy's Motion To Postpone A Lawfully Set Execution Date Sought A Stay Of Execution Or An Injunction ........................................................................ 20

ii

B.    The District Court Correctly Determined That LeCroy's Request Is Not Redressable Under The All Writs Act ............................................................... 26

    1.    LeCroy cannot use the All Writs Act to circumvent the traditional equitable relief requirements in order to halt an execution .............. 27

    2.    Section 3599 does not confer authority or jurisdiction on the district court to enjoin LeCroy's execution under the All Writs Act............ 32

II.    BOP Regulations Neither Confer Nor Recognize Authority For The District Court To Reset LeCroy's Lawfully Scheduled Execution Date ....................................................... 35

III.    Even If The District Court Had The Authority To Reset The Execution Date, It Would Have Been A Grave Abuse Of Discretion To Do So In The Circumstances Of This Case.......... 38

    A.    The Inability Of LeCroy's Lead Counsel To Witness His Execution Does Not Infringe Any Right Conferred By The Constitution, Statute, Regulation, Or Court Order ................................................................................ 39

    B.    The COVID-19 Pandemic Does Not Provide A Basis To Reset The Execution Date.......................................... 43

    C.    The Government Has an Overwhelming Interest in Proceeding with LeCroy's Execution as Scheduled by BOP ............................................................................... 45

CONCLUSION.................................................................................... 47

# TABLE OF AUTHORITIES

## Cases

*Alabama v. U.S. Army Corps of Engineers*,
  424 F.3d 1118 (11th Cir. 2005) .........................................................27, 30

*Barr v. Lee*,
  No. 20A8, 2020 WL 3964985 (U.S. July 14, 2020) ............................. 3, 47

*Barr v. Purkey*,
  No. 20A10, 2020 WL 4006821 (U.S. July 16, 2020) ................................ 47

*Barr v. Roane*,
  140 S. Ct. 353 (2019) ............................................................................... 40

*Baze v. Parker*,
  632 F.3d 338 (6th Cir. 2011) .............................................................30, 34

*Baze v. Parker*,
  711 F. Supp. 2d 774 (E.D. Ky. 2010) ........................................... 30, 33, 34

*Baze v. Rees*,
  553 U.S. 35 (2008) ..................................................................................... 9

*Bertolotti v. Dugger*,
  883 F.2d 1503 (11th Cir. 1989) ............................................................... 23

*Bourgeois v. Barr*,
  No. 19-1348, 2020 WL 3492763 (U.S. June 29, 2020) ............................ 10

*Bowles v. Desantis*,
  934 F.3d 1230 (11th Cir.), *cert. denied*, 140 S. Ct. 26 (2019) .................33, 44

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019) ..................................................... 3, 5, 9, 45, 46, 47

*Burton v. Alabama DOC*,
  No. 17-11536, 2017 WL 4457572 (11th Cir. Sept. 29, 2017) ................... 29

*Calderon v. Thompson*,
523 U.S. 538 (1998) ................................................................... 45

*Clinton v. Goldsmith*,
526 U.S. 529 (1999) ..................................................................... 3

*Dunn v. Borden*,
138 S. Ct. 312 (2017) ................................................................. 29

*Dunn v. McNabb*,
138 S. Ct. 369 (2017) .......................................................... 2, 16, 28

*Dunn v. Melson*,
137 S. Ct. 2237 (2017) ............................................................... 29

*Fernandez v. United States*,
941 F.2d 1488 (11th Cir. 1991) .................................................... 4

*Fla. Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*,
601 F.2d 199 (5th Cir. 1979) ..................................................... 31

*Glossip v. Gross*,
576 U.S. 863 (2015) ................................................................... 21

*Grayson v. Alabama DOC*,
No. 17-14612, 2017 WL 4767741 (11th Cir. Oct. 18, 2017) .................... 29

*Hamilton v. Southland Christian School, Inc.*,
680 F.3d 1316 (11th Cir. 2012) .................................................. 40

*Harbison v. Bell*,
556 U.S. 180 (2009) ................................................................... 33

*Henson v. Ciba-Geigy Corp.*,
261 F.3d 1065 (11th Cir. 2001) .................................................... 3

*Hill v. McDonough*,
547 U.S. 573 (2006) .......................................................... 24, 25, 28

*Holden v. Minnesota*,
137 U.S. 483 (1890) ..................................................................... 5

v

*In re Campbell*,
   874 F.3d 454 (6th Cir. 2017) .............................................................. 24

*In re Federal Bureau of Prisons' Execution Protocol Cases*,
   955 F.3d 106 (D.C. Cir. 2020) ....................................................... 6, 9, 40

*In re Managed Care*,
   756 F.3d 1222 (11th Cir. 2014) ......................................................... 19

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ................................................. 22, 29, 30

*LeCroy v. United States*,
   550 U.S. 905 (2007) .......................................................................... 12

*LeCroy v. United States*,
   575 U.S. 904 (2015) .......................................................................... 12

*LeCroy v. United States*,
   739 F.3d 1297 (11th Cir. 2014) ...................................................... 12, 46

*Long v. Sec'y, Dep't of Corr.*,
   924 F.3d 1171 (11th Cir.), *cert. denied*, 139 S. Ct. 2635 (2019) ........ 19, 21, 26

*McFarland v. Scott*,
   512 U.S. 849 (1994) .......................................................................... 33

*Nelson v. Campbell*,
   541 U.S. 637 (2004) .......................................................................... 24

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................*passim*

*Peterson v. Barr*,
   965 F.3d 549 (7th Cir. 2020), *stay denied*, 2020 WL 3964236 (U.S.
   July 14, 2020) ............................................................................. 40, 41

*Rhines v. Young*,
   941 F.3d 894 (8th Cir. 2019), *cert. denied*, 140 S. Ct. 8 (2019) ................... 35

vi

*Schiavo ex rel. Schindler v. Schiavo,*
  403 F.3d 1223 (11th Cir. 2005)...........................................................*passim*

*The Estate of Lockett by and through Lockett v. Fallin,*
  841 F.3d 1098 (10th Cir. 2016)............................................................. 39

*United States v. LeCroy,*
  441 F.3d 914 (11th Cir. 2006)...............................................10, 11, 12, 46

*United States v. Lee,*
  No. 4:97-cr-243, 2020 WL 3921174 (E.D. Ark. July 10, 2020)........ 6, 43, 44

*United States v. Mitchell,*
  No. 20-99009, 2020 WL 4815961 (9th Cir. Aug. 19, 2020) ...................... 40

*United States v. Purkey,*
  No. 20A4, 2020 WL 3988688 (U.S. July 15, 2020)................................. 29

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)................................................................................21, 24

## Statutes, Rules, and Constitutional Provisions

U.S. Const. art. II, § 2 ............................................................................8

18 U.S.C. § 3596................................................................................ 8, 39

18 U.S.C. § 3599 ..........................................................................*passim*

21 U.S.C. § 848.......................................................................................6

28 U.S.C. § 1291 ....................................................................................4

28 U.S.C. § 1292 ....................................................................................4

28 U.S.C. § 1651 ................................................................... 4, 16, 26, 28

28 U.S.C. § 2253 ................................................................................ 3, 4

28 U.S.C. § 2255 ................................................................................ 1, 12

42 U.S.C. § 1983 ................................................................................... 24

Fed. R. Civ. P. 65 ................................................................................. 31

Fed. R. App. P. 28 ................................................................................. 3

Ga. Code Ann. § 17-10-41 .............................................................. 39, 41

28 C.F.R. § 26.2 ............................................................................... 7, 36

28 C.F.R. § 26.3 .............................................................................*passim*

28 C.F.R. § 26.4 ......................................................................... 7, 39, 41

## Other Authorities

7 Op. Att'y Gen. 561 (1855) ................................................................. 5, 6

Amanda Watts, *Fauci says normal life may not be back until the end of 2021*, at https://www.cnn.com/2020/09/11/health/fauci-normal-life-2021/index.html ............................................................................... 45

Black's Law Dictionary (11th ed. 2019) .................................................. 20

*Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01 (Nov. 30, 1992) ............................................................................. 7

*Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-01 (Jan. 19, 1993) ................................................................................ 6

**INTRODUCTION**

Appellant William Emmett LeCroy was convicted and sentenced to death more than 16 years ago for the carjacking, rape, and murder of Joann Tiesler. He received thorough review of his conviction on direct appeal and on collateral review under 28 U.S.C. § 2255; his conviction and sentence were twice affirmed by this Court, after which the Supreme Court twice denied petitions for certiorari; and his execution is currently scheduled for September 22, 2020. On August 24, 2020, more than three weeks after the Bureau of Prisons (BOP) set that execution date, LeCroy filed a motion asking the district court to override that determination and set a new execution date for Spring 2021. LeCroy based that request on limitations that the COVID-19 pandemic allegedly placed on his three lawyers' ability to prepare a clemency application and lead counsel's ability to attend the execution, though counsel have since submitted a clemency petition on LeCroy's behalf. DE599.

The district court soundly denied LeCroy's motion, as have the other two courts to consider similar requests this year. *See* DE598 at 27. In substance, LeCroy's motion seeks either to *stay* the effect of the Executive Branch's lawful decision to set a particular execution date or to *enjoin* the Executive from proceeding with the execution on the assigned date. Either way, LeCroy was required to satisfy the traditional four-part standard for halting an execution, a

1

showing that he concedes in this Court that he cannot make. The district court rightly recognized that LeCroy cannot circumvent the required showing by resorting to the All Writs Act, as made clear by both this Court's precedents and Supreme Court orders vacating other execution-halting injunctions from this circuit entered under that Act. *See Dunn v. McNabb*, 138 S. Ct. 369 (2017).

But even if the district court had some authority to modify the execution date under the All Writs Act or another source of law, it would have been a manifest abuse of discretion for the court to exercise that authority here. The court found that LeCroy is represented by three capable lawyers (DE601 at 16), one of whom is able to attend the execution as a witness, and all of whom are actively litigating on LeCroy's behalf in multiple jurisdictions. Indeed, the day of the district court's ruling, lead counsel joined with a new lawyer to file a civil suit in Washington, D.C., seeking to enjoin the execution. And LeCroy identifies no constitutional right, statutory right, or court order that would be violated if his preferred lawyer is unable to attend the execution, however sincere that lawyer's desire is to do so. Particularly when weighed against the government's powerful interest in the timely enforcement of a criminal sentence imposed for a staggeringly brutal crime, the concerns LeCroy raises simply do not "justify last-minute intervention by a Federal Court" to halt an execution, which the Supreme Court recently made clear "'should be the extreme

2

exception, not the norm.'" *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (per curiam) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)).

## JURISDICTIONAL STATEMENT

LeCroy's jurisdictional statement (Br. ix) fails to comply with Federal Rule of Appellate Procedure 28(a)(4)(A)'s requirement that he state "the basis for the district court's . . . subject-matter jurisdiction, with citations to applicable statutory provisions." LeCroy elsewhere cites the All Writs Act, but it "does not provide an independent basis of federal subject-matter jurisdiction." *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065, 1070 (11th Cir. 2001) (citing *Clinton v. Goldsmith*, 526 U.S. 529 (1999)). The district court itself questioned whether LeCroy's motion raised a challenge to the implementation of his sentence properly brought in the district of confinement, rather than the court of conviction, DE601 at 18 n.10, and he has not identified any basis for his motion.

As for this Court's jurisdiction, LeCroy suggests (Br. ix) that it lies under 28 U.S.C. § 2253(a), which provides that "[i]n a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review . . . by the court of appeals for the circuit in which the proceeding is held." But the district court's decision here is not a "final order"

in "a proceeding under section 2255."[1] Because the decision below did not arise in, or conclude, a Section 2255 proceeding, it is not a "final order" under Section 2253. If it were, then LeCroy would be required to obtain a certificate of appealability under Section 2253(c)(1)(B), something he has not done. *See* 28 U.S.C. § 2253(c)(1)(B).

To the extent the district court denied a request for relief that amounts to an injunction, *see* pp. 20-26, *infra*, then 28 U.S.C. § 1292(a)(1) would provide jurisdiction to review such a denial. LeCroy, however, disavows that he is seeking injunctive relief, and claims he is requesting some form of *sui generis* relief under the All Writs Act. To the extent that the district court had jurisdiction over such a request, its determination that no such relief is available might be reviewable as a final order under 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES**

1. Whether the district court abused its discretion in determining that LeCroy's motion to modify the execution date was in substance a request to stay or enjoin his scheduled execution and that he is not entitled to relief under either the traditional stay factors or the All Writs Act, 28 U.S.C. § 1651(a).

---

[1] LeCroy also cannot suggest that the decision below is a final order "in a habeas corpus proceeding." As mentioned, such a proceeding must be brought in an inmate's district of confinement—here, the Southern District of Indiana. *See Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991).

4

2.    Whether Bureau of Prisons regulations confer or recognize residual district court authority to reset LeCroy's lawfully scheduled execution date.

3.    Whether, if the district court did have authority, the judgment should nonetheless be affirmed on the grounds that it would have abused its discretion by resetting the execution date.

## STATEMENT OF THE CASE

### I.    Legal Background

A.    Since the First Congress "made a number of" federal offenses "punishable by death" in the Crimes Act of 1790, *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019), Congress has not prescribed rules for fixing the date of execution.  That omission is consistent with the fact that "at common law the sentence of death was generally silent as to the precise day of execution." *Holden v. Minnesota*, 137 U.S. 483, 496 (1890).  The Supreme Court has determined, however, that the Constitution permits either the executive or judiciary to set a date for execution. *Id.* at 495-96.

As a matter of historical practice, in the federal system, both the executive and judicial branches have set execution dates in death penalty cases.  In an 1855 opinion, the Attorney General explained that sometimes the President fixed the date of execution and sometimes the courts did so.  7 Op. Att'y Gen. 561, 562 (1855); *see Implementation of Death Sentences in Federal Cases*, 58 Fed. Reg. 4898-

01, at 4899-4900 (Jan. 19, 1993) (describing nineteenth-century practices); *United States v. Lee*, No. 4:97-cr-243, 2020 WL 3921174, at \*3 (E.D. Ark. July 10, 2020). In 1830, President Andrew Jackson decided to "leave" it to the "discretion of the court" to fix the date of execution, and it appears that this became the "established practice" for at least a period. 7 Op. Att'y Gen. at 562-63. But the varied practice in which either the Judiciary or the Executive Branch may set the date of execution in a federal death penalty case has persisted and continued to the recent past. *See* pp. 8-9, *infra*.

While Congress has not set rules for fixing the date of federal executions, it has at various times set rules for the method of execution. The Crimes Act of 1790 prescribed hanging as the method of execution. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108-09 (D.C. Cir. 2020) (per curiam) ("*Protocol Cases*"). That provision governed until 1937, when Congress determined that the method of execution would be the method prescribed by the laws of the State within which sentence was imposed. *Id.* at 109. Congress repealed the 1937 provision in 1984, and the Attorney General promulgated regulations in 1993 to "fill this gap." *Id.*[2]

---

[2] The 1993 regulations were also prompted by Congress's passage of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1989), which created the death penalty for certain drug-related offenses and established procedures for imposing

The 1993 regulations provide, in relevant part, that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a). The regulations also direct federal prosecutors to file a "proposed Judgment and Order" with the district court reflecting these procedures and providing that "[t]he prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence." *Id.* § 26.2(a). Other regulations address who may visit with the prisoner in the week preceding the execution and who, at the invitation of the Warden or the prisoner, may be "present at the execution" to witness it. *Id.* § 26.4(b)-(d)

B.    While Congress has not set rules for fixing the date of federal

---

a sentence of death but did not create rules for implementing a death sentence, such as rules regarding the method of execution. *See Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992). Congress repealed the Anti-Drug Abuse Act's procedural death-penalty provisions in 2006.

executions, it has at various times set rules establishing the method of execution. As relevant here, Congress enacted the Federal Death Penalty Act (FDPA) in 1994. That statute provides, in a section entitled "[i]mplementation of a sentence of death," that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," and "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).

Three federal defendants—Timothy McVeigh, Juan Raul Garza, and Louis Jones, Jr.—were executed in the first decade after the FDPA's enactment. The Bureau of Prisons set the execution dates for McVeigh and Jones. The district court initially set the execution date for Garza, who had been sentenced under pre-FDPA law. *See* Doc. 1413-1, at 5-9, *United States v. Lee*, No. 4:97-cr-243 (E.D. Ark. July 7, 2020). But President Clinton postponed that date in (twice) granting a reprieve, *see id.*; U.S. Const. art. II, § 2, and Garza was ultimately executed on a date set by the Executive Branch.

For more than 15 years after Jones's 2003 execution, however, legal and practical impediments prevented federal executions from going forward. Legally, civil litigation challenging the then-existing federal execution protocol was stayed while the Supreme Court considered constitutional challenges to state executions conducted by lethal injection, including in *Baze v. Rees*, 553 U.S. 35 (2008). *See Protocol Cases*, 955 F.3d at 110. A practical obstacle had also emerged by 2011, as "anti-death-penalty advocates induced the company that manufactured" one of the drugs in the federal protocol "to stop supplying it for use in executions." *Bucklew*, 139 S. Ct. at 1120.

The Bureau of Prisons explored a single-drug execution protocol using the sedative pentobarbital and, after careful study, adopted that protocol in 2019. *Protocol Cases*, 955 F.3d at 110. BOP noted that recent state executions had used that drug without difficulty and that courts had rejected constitutional challenges to its use, *id.*, including the Supreme Court in *Bucklew*. BOP was also able to "locate[] a 'viable source' for obtaining it." *Id.* Meanwhile, the Attorney General announced the resumption of federal executions and scheduled the first of those for December 2019. Several of those dates were stayed as litigation continued in the *Protocol Cases* and elsewhere. But the D.C. Circuit ultimately rejected the prisoners' challenges to the 2019 protocol, *id.* at 112-13, and the Supreme Court denied certiorari, *Bourgeois v. Barr*, No. 19-1348, 2020 WL

9

3492763 (U.S. June 29, 2020).[3]  Since that time, five federal prisoners have been executed:  Daniel Lewis Lee, Wesley Ira Purkey, Dustin Lee Honken, Lezmond Mitchell, and Keith Dwayne Nelson.

## II.    Factual and Procedural History

### A.    LeCroy's Conviction And Death Sentence Are Affirmed On Appeal And Collateral Review

In 2001, LeCroy murdered Joann Tiesler less than two months after being released from prior terms of state and federal imprisonment for serious felony offenses.  *United States v. LeCroy*, 441 F.3d 914, 918-19 (11th Cir. 2006).  LeCroy was planning to abscond from federal supervision, including the psychosexual examination he had been ordered to undergo, and needed a vehicle.  *Id.* at 919.  Tiesler was a nurse who lived in a cabin within walking distance of the cabin where LeCroy was staying.  *Id.* at 919-20.

On October 7, 2001, while Tiesler was visiting her fiancé, LeCroy broke into her residence armed with a loaded shotgun, a knife, and plastic cable ties.  After Tiesler returned to her cabin, LeCroy struck her in the back of her head with his shotgun and discharged the weapon in the hallway outside her

---

[3] On the same day the district court ruled in this case, LeCroy filed a complaint in the U.S. District Court for the District of Columbia that has since been consolidated with the remaining *Protocol Cases*, No. 19-mc-145 (D.D.C.).  LeCroy's motion for a preliminary injunction in that proceeding is fully briefed and, as of this writing, remains pending before the D.C. district court.

bedroom. LeCroy then tied Tiesler's ankles together and bound her hands behind her back with the plastic cable ties. He stripped Tiesler and forced her to kneel at the foot of her bed, where he raped and sodomized her. Afterward, LeCroy strangled Tiesler with an electrical cord; slit her throat; and stabbed her repeatedly in the back. LeCroy left Tiesler's naked body bound on her bed, where she was discovered by neighbors the following day. He loaded Tiesler's Ford Explorer with supplies and drove toward Canada. 441 F.3d at 919-20.

LeCroy was apprehended two days later at the U.S.-Canadian border driving Tiesler's vehicle. The knife LeCroy used to kill Tiesler was in the vehicle, as were two notes LeCroy had written on the back of a torn map. One note stated, "Please call the police and report this vehicle as stolen. Thanks, The Thief," and the other note stated, "Please, please, please forgive me Joanne ... you were an angel and I killed you. Now I have to live with that and I can never go home. I am a vagabond and doomed to hell." 441 F.3d at 919-20 & nn.2-3.

In 2002, LeCroy was charged with taking a motor vehicle by force, violence, and intimidation from Joann Tiesler resulting in her death, in violation of 18 U.S.C. § 2119(3). The jury found him guilty and, at the conclusion of the sentencing phase, returned a sentence of death. 441 F.3d at 920. The district court entered a written judgment committing LeCroy to the Attorney General's custody while he pursued his appeals and further providing that, when the

judgment became final, "the Attorney General shall release [LeCroy] to the custody of the United States Marshal who shall make the arrangements for the execution and supervise implementation of the sentence." DE417 at 3; *see* DE437-2 at 55-56 (oral pronouncement of sentence).

On direct appeal, this Court unanimously affirmed LeCroy's conviction and sentence. *LeCroy*, 441 F.3d at 917-31. The Supreme Court denied his petition for a writ of certiorari. 550 U.S. 905 (2007). The next month, LeCroy moved the district court to appoint counsel to prepare and file a collateral attack. DE476. The court granted that motion and appointed John R. Martin and Sandra L. Michaels. DE479. In April 2008, those attorneys filed on LeCroy's behalf a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. DE493. The district court denied the motion after a three-day evidentiary hearing, DE551; this Court affirmed, 739 F.3d 1297 (11th Cir. 2014), and the Supreme Court again denied certiorari, 575 U.S. 904 (2015).

In April 2015, LeCroy filed a letter motion that sought the reappointment of attorneys Martin and Michaels under 18 U.S.C. § 3599(e) "for whatever remaining legal processes are available to him, as well as a request for commutation of his sentence by the President." DE577. The district court granted the motion. DE578. LeCroy's counsel filed such a clemency request in December 2016. DE598-1. In January 2017, however, LeCroy asked to

12

withdraw his petition, and the Department of Justice's Office of the Pardon Attorney administratively closed LeCroy's clemency petition without prejudice on January 24, 2017. *Id.*

In December 2018, LeCroy moved the district court to appoint the Federal Defender Services of Eastern Tennessee (FDSET) as additional counsel to assist in representing him "through the conclusion of proceedings related to his capital conviction and sentence of death, including executive clemency proceedings." DE583. The court granted the motion in January 2019, DE584, and Stephen Allen Ferrell of FDSET entered an appearance on behalf of LeCroy in March 2019, DE585. Ferrell has visited LeCroy twice since his appointment. DE607 at 19.

Throughout those proceedings, LeCroy has remained at the Federal Correctional Center in Terre Haute, Indiana. In March 2020, BOP announced that in-person legal visits generally would be suspended to mitigate the risk of exposure to COVID-19 by external visitors. DE598-2 ¶ 4. BOP, however, allows for case-by-case accommodations of in-person legal visits. *Id.* ¶ 5. It also provides for unmonitored legal calls and, since July 2020, has offered unmonitored video conferencing with outside counsel. *Id.* ¶¶ 7-8. Since BOP began its modified operations, LeCroy has had 10 unmonitored calls with legal counsel but has not made any video-conferencing requests. *Id.* ¶ 7. BOP was

13

prepared to accommodate attorney Ferrell's one request for an in-person meeting with LeCroy, which was scheduled for August 24, 2020, but Ferrell ultimately cancelled it. *Id.* ¶ 5.

> B. After A Hearing, The District Court Denies LeCroy's Motion To Modify The September 22, 2020 Execution Date

1. On July 31, 2020, BOP notified LeCroy and his counsel that it had scheduled LeCroy's execution for September 22, 2020. DE593 at 4. The government entered a notice on the docket on August 1, 2020, providing additional notice of the execution date. DE591.

More than three weeks later, on the evening of August 24, LeCroy filed a motion asking the district court "to reset or modify" the execution date until "a date certain in Spring 2021." DE593 at 1-2. LeCroy argued that the health condition of his lead attorney, combined with the COVID-19 pandemic, prevented counsel from fulfilling their asserted duties in seeking clemency and attending LeCroy's execution. DE593 at 6-9, 12.[4] He contended that the court had the authority to move the execution date under the BOP regulations and, as a means of enforcing earlier orders, under the All Writs Act. *Id.*

---

[4] After LeCroy filed his motion but before the district court ruled on it, his attorneys submitted a renewed clemency application with the Department's Office of Pardon Attorney. DE599; DE601 at 18.

14

Four days later, the government filed an opposition accompanied by declarations from the Office of the Pardon Attorney and the Warden of FCC Terre Haute. DE598. The government argued that LeCroy's request to "reset" the execution date was in substance a motion to stay or enjoin his execution that did not meet the standard for those remedies; that neither BOP regulations nor the All Writs Act conferred the authority he claimed; and that, even if the court had such authority, it would be an abuse of discretion to postpone the execution date based on the concerns that LeCroy raised. *Id.* at 1-3, 11-30.

2. After a hearing, the district court denied LeCroy's motion in a 19-page order. DE601.[5] As relevant here, the court rejected LeCroy's contention "that setting a different execution date merely 'renders BOP date-setting regulations non-operational.'" *Id.* at 10. The court instead explained that, if it "were amenable to LeCroy's request and inclined to 'reset' or 'modify' the date of execution, granting the requested relief . . . would amount to a stay." *Id.* The court noted that the Supreme Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009), had described a stay in part as a remedy that postpones the operation of existing orders or judgments. *Id.* at 17. And the court determined that LeCroy's motion sought "exactly" such relief—*i.e.*, it "asks the [c]ourt to *postpone* his

---

[5] The order was distributed to the parties after business hours on September 4, 2020, but was not docketed until the next business day (September 8).

15

execution in light of the pandemic and limitations of Lead Counsel." *Id.*

The district court also rejected LeCroy's request for relief under the All Writs Act, 28 U.S.C. § 1651(a). DE601 at 14-16. The court explained that, under Supreme Court and circuit precedent, the Act cannot be used to evade the otherwise applicable requirements for obtaining a stay or an injunction, particularly in the context of a stay of execution. *Id.* (citing *Dunn v. McNabb*, 138 S. Ct. 369 (2017), and *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005)). The court further observed that, although LeCroy's clemency petition was pending before the Office of the Pardon Attorney, LeCroy "has no pending habeas action" and "has not moved for a stay of execution [or] attempted to satisfy the traditional criteria for imposing a stay." *Id.* at 18. Absent the requisite showing, the court concluded, LeCroy's request was "not redressable by [t]he All Writs Act." *Id.*

## SUMMARY OF ARGUMENT

I. The district court correctly rejected LeCroy's submission that his request to postpone his execution sought something other than the equivalent of a stay of execution or an injunction, traditional equitable remedies to which LeCroy concedes he is not entitled. The requested relief amounts to a stay of execution because it would render temporarily inoperative the execution date lawfully set by the Executive Branch. Likewise, it sought an injunction because

16

it would tell executive officials what not to do (execute LeCroy on September 22) and what to do (postpone the execution date until Spring 2021). The fact that LeCroy is not seeking a delay pending the resolution of other claims in this district court does not change that result, both because injunctions can issue in that procedural posture and because such a rule would effectively create an exception to the stay standard for those litigants least deserving of it.

The district court also soundly determined that LeCroy's request was not redressable under the All Writs Act. The Act does not allow a litigant to circumvent the stringent standards governing stays or injunctions, as the Supreme Court has recently emphasized in the execution context. Nor would the district court have been justified in using the All Writs Act to superintend the run-up to an execution under the guise of enforcing earlier orders appointing post-conviction counsel under 18 U.S.C. § 3599(e).

II.  Neither the Bureau of Prison regulations in 28 CFR Part 26 nor the current BOP execution protocol authorized the district court to reset the execution date. Those provisions govern internal Executive Branch conduct and do not confer judicial authority. And the "[e]xcept" clause in LeCroy's cited regulation merely recognizes the concurrent power of courts and the executive to set the execution date initially; it does not suggest that a district court has free-

17

floating discretion to reset an otherwise lawful date set by the Executive under a court judgment that required the Executive to implement the sentence.

III. Even if the district court had authority to reset the execution date, this Court can affirm on the alternative basis that it would have been a manifest abuse of discretion to do so on the facts here. LeCroy identifies no constitutional, statutory, or regulatory provision that would justify halting his execution solely because his preferred attorney cannot travel to his execution. LeCroy is represented by three capable lawyers, at least one of whom can attend the execution as a witness and all of whom are actively litigating on his behalf. Those circumstances simply cannot justify additional delay of uncertain duration, especially when weighed against the government's powerful interest in timely enforcement of the lawful judgment imposed for LeCroy's brutal crime.

## STANDARD OF REVIEW

LeCroy asserts (Br. 6) that *de novo* review is warranted because he "is challenging the correctness of legal findings by the District Court." But LeCroy's request required the district court to interpret its prior orders (*e.g.*, DE601 at 9), and decide whether it could or would exercise "discretion" (Br. iii) to enter an order halting a scheduled execution. This Court reviews rulings of that nature, however labeled, for abuse of discretion. *See Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1175 (11th Cir.) (reviewing the denial of a motion for a

preliminary injunction or a "stay of execution only for abuse of discretion"), *cert. denied*, 139 S. Ct. 2635 (2019); *In re Managed Care*, 756 F.3d 1222, 1234 (11th Cir. 2014) (same as to a court's interpretation of its own orders).

The abuse-of-discretion standard therefore should apply here.  Under that deferential standard, this Court will reverse only if the district court "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  *Long*, 924 F.3d at 1175 (quotation marks omitted).

## ARGUMENT

### I.  The District Court Correctly Determined That LeCroy's Motion Sought Either A Stay Of Execution Or An Injunction And That Relief Was Not Available Under The All Writs Act

LeCroy argues (Br. 8-16) that the district court erred in denying his request for a form of relief that would be *sui generis* and is apparently unprecedented— *viz.*, an order postponing a lawfully scheduled federal execution that is neither a stay of execution nor an injunction barring the Executive Branch from proceeding on the scheduled date.  The district court, however, correctly concluded that LeCroy's request in substance sought those very forms of equitable relief, that he cannot satisfy the stringent standard required to obtain them, and that his request is also not redressable under the All Writs Act.

19

A.    LeCroy's Motion To Postpone A Lawfully Set Execution Date Sought A Stay Of Execution Or An Injunction

1. LeCroy's challenge to the district court's order is narrow. He does not contest the court's understanding that, although it could have set an execution date at the time it imposed LeCroy's sentence, the court instead assigned that task to the Executive Branch when it entered a judgment directing the Attorney General and United States Marshal "make the arrangements for the execution and supervise implementation of the sentence." DE417 at 3; *see* DE601 at 7, 9. LeCroy also appears to accept in this Court that the Executive Branch acted lawfully when, consistent with the judgment, it subsequently set an execution date of September 22, 2020. *See* 28 C.F.R. § 26.3(a)(1). And he concedes that, if a stay of execution or a "traditional" injunction are the only remedies available to halt his execution at this point, then he cannot satisfy the relevant standard and is not entitled to one. Br. 8-9. He contends only that the district court had the authority to grant relief because he did not seek those remedies. That contention fails because LeCroy's motion, in substance, sought either a stay of execution, *see* DE601 at 10, 17-18, or an injunction.

Stays and injunctions, although conceptually distinct, have substantial functional "overlap." *Nken v. Holder*, 556 U.S. 418, 428 (2009). A stay "halt[s] or postpone[s] some portion of [a] proceeding," or "temporarily divest[s] an order of enforceability." *Id.*; *see* Black's Law Dictionary (11th ed. 2019)

20

(defining stay as "[t]he postponement or halting of a proceeding, judgment, or the like," and "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding"). An injunction "is a means by which a court tells someone what to do or not to do." *Nken*, 556 U.S. at 428. It is a "judicial process or mandate operating *in personam*," that "directs the conduct of a party, and does so with the backing of [the court's] full coercive powers." *Id.* (quotation marks omitted).

Both forms of relief require an applicant to satisfy a demanding standard. To obtain a stay of execution, LeCroy would have to show that: "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the [stay] would not substantially harm the other litigant, and (4) if issued, the [stay] would not be adverse to the public interest." *Long*, 924 F.3d at 1176. The same factors govern issuance of an injunction in the execution context. *Id.*; *see Glossip v. Gross*, 576 U.S. 863, 876 (2015); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 33 (2008). And LeCroy's requested relief meets the definition of at least one of these remedies.

2.    To begin with, the district court correctly determined that the relief LeCroy requested was in substance a stay of execution. DE601 at 10, 17-18. As explained, the Court in *Nken* described a stay in part as a judicial ruling that halts

21

or postpones some portion of a proceeding, "by temporarily divesting an order of enforceability."   556 U.S. at 428; *see id.* at 428-29 (stay "temporarily suspend[s] the source of authority to act").  That is what LeCroy sought—an order that "*postpone[s]* his execution in light of the pandemic and limitations of Lead Counsel," and does so by temporarily rendering inoperative an order by executive officials setting an execution date.  DE601 at 17.

That the order LeCroy requests would be directed to the Executive Branch rather than to a lower court does not excuse him from satisfying the traditional standard.  To the contrary, in this context that merely show that in substance the relief LeCroy seeks is an injunction.  The requested order would operate *in personam* on Executive Branch officials by telling them "what to do or not to do," *Nken*, 556 U.S. at 428.  Specifically, it would tell them *not* to execute LeCroy on the currently scheduled date of September 22, 2020, but to do so in Spring 2021, ostensibly on a date to be set by the court.  A command of that nature, backed by the district court's coercive powers, is in sum and substance an injunction.  *See id.*[6]  At a minimum, such an order seeks to suspend action

---

[6] Some language in LeCroy's brief can be taken to renew his contention in the district court that he was not seeking an injunction at all.  Elsewhere, however, LeCroy seems to concede that his requested relief would require some form of injunction. *See* Br. 14 (discussing All Writs Acts injunctions and quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)).

already taken by the Executive to implement his execution—here, BOP's notice setting his execution date—and so LeCroy must at least satisfy the stay-of-execution standard. *See* DE591; *see also Bertolotti v. Dugger*, 883 F.2d 1503, 1507 (11th Cir. 1989) (explaining that a state-court order "grant[ing] a temporary stay of execution[] effectively null[ified]" an "execution warrant" signed by Florida's governor); *cf. Nken*, 556 U.S. at 429, 433-36 (concluding that alien's request for stay pending appeal of removal order issued by executive officials must satisfy traditional stay factors).

3. In resisting these straightforward conclusions, LeCroy stresses (Br. 9-11) the language in *Nken* that a stay—there, a stay pending appeal—and a *preliminary* injunction can both "have the practical effect of preventing some action before the legality of that action has been conclusively determined." 556 U.S. at 428. LeCroy then asserts that, because he has no other challenge to the lawfulness of his execution pending before this district court, his motion cannot be construed as seeking a stay or a "traditional injunction." Br. 8.[7] That argument fails for several reasons.

a. As an initial matter, the fact that LeCroy has no other claims pending

---

[7] LeCroy now has a challenge to his execution pending in district court in Washington, D.C. *See* p. 10 n.3, *supra*. And one effect of granting the relief he seeks here would be to afford him time to continue litigating in that forum, even if the district court there ends up *denying* his motion for a preliminary injunction.

in *this* district court does not prevent his requested postponement order from qualifying as an injunction. If anything, that fact means that LeCroy in effect seeks a permanent injunction, rather than a preliminary injunction pending the outcome of this litigation. That in turn would mean that he must show "actual success" on the merits rather than a mere "likelihood of success." *Winter*, 555 U.S. at 32 (quotation marks omitted).

Method-of-execution challenges litigated under 42 U.S.C. § 1983 further illustrate that an order can be an injunction even if no other claim is pending. In those challenges, inmates are permitted to proceed through a civil action—rather than habeas corpus—precisely because they are not contesting the lawfulness of their conviction or death sentence. *See Hill v. McDonough*, 547 U.S. 573 (2006); *Nelson v. Campbell*, 541 U.S. 637 (2004). Through such litigation, the movants may obtain a court order that bars a state government from carrying out a death sentence under the state's allegedly unlawful execution protocol. *See Hill*, 547 U.S. at 580-81; *see also, e.g.*, *In re Campbell*, 874 F.3d 454, 464-65 (6th Cir. 2017) (explaining that a successful challenge to a state's "shifting execution protocols" would properly be remedied with "an injunction . . . forbidding" the state from executing the defendant using its existing method but would still permit the state to execute the inmate if it found "a method that comports with the Eighth Amendment"). Such an order—which is plainly an injunction, *see*

*Hill*, 547 U.S. at 580-81, 583—does not necessarily command the government *never* to carry out the sentence.  Rather, it means that the death sentence cannot go forward unless and until the state, for example, is prepared to use an execution protocol that satisfies constitutional and other standards.

LeCroy's request here is analogous in relevant respects.  Just as a court might put an execution on hold until out-of-court events like the adoption of a new execution protocol occur, LeCroy is asking the district court to postpone his execution until the effects of the COVID-19 pandemic subside so that his preferred attorney can be present.  Both of those orders are (or would be) a "traditional injunction" barring executive officials from acting and/or specifying the circumstances under which they can act.  Br. 8.  And LeCroy concedes that he is not entitled to a traditional injunction.  *Id.* at 8-9.[8]

b.  In addition to lacking support in case law, LeCroy's theory that he can bypass the traditional stay or injunction standard by asking for a delay unaccompanied by other relief would lead to a stark anomaly.  In particular, if

---

[8] LeCroy's preferred analogy—that his request is akin to a motion to continue a trial date because of counsel's unavailability (Br. 11)—is inapt.  In the trial context, the district court manages its own docket and the affairs of the parties before it during active litigation.  LeCroy's current request would have the court manage Executive Branch scheduling decisions and do so years after proceedings before the court ended and the court itself delegated the task of implementing the sentence to the Executive.  *See* DE601 at 9.

25

a capital defendant must make a stringent showing to forestall execution even when he has active litigation before a court, *see, e.g., Long*, 924 F.3d at 1176, it would be anomalous to permit a lesser showing for an order that seeks the same immediate remedy—postponement of the execution date—untethered to any ultimate possibility of relief from the defendant's conviction or sentence. Indeed, under LeCroy's view, defendants in his position could always ask the sentencing court to postpone an execution as an exercise of the court's discretion, and they would never have to meet the more demanding standards for obtaining equitable relief to delay an execution. Yet federal executions have never been regarded as an exception to ordinary stay and injunction standards. Accordingly, and as the government argued below (DE607 at 26), the fact that LeCroy has no other challenges pending in this district court makes his request for delay *less* supportable, not more.

> B. <u>The District Court Correctly Determined That LeCroy's Request Is Not Redressable Under The All Writs Act</u>

The All Writs Act, 28 U.S.C. § 1651, also does not provide LeCroy with an avenue for his requested relief. The Supreme Court and this Court have made clear that the All Writs Act is an extraordinary remedy for extraordinary circumstances, and it cannot be used to evade the traditional heightened showing required to halt an execution—especially on the present facts. In particular, where "LeCroy has three highly capable attorneys appointed to

26

represent him," DE601 at 16, the fact that his top choice among his counsel cannot attend his execution does not come close to the sort of extraordinary circumstances that warrant an injunction under the All Writs Act. Nor does 18 U.S.C. § 3599, which authorizes the appointment of counsel for indigent death-eligible defendants, provide a basis to issue an injunction postponing LeCroy's execution under the All Writs Act. LeCroy identifies no decision that has relied on Section 3599 to issue such an injunction, because the district courts' authority under the statute is narrow in scope and does not permit courts to superintend counsel's (or the Executive's) performance up to the moment of a defendant's execution. For both reasons, the district court correctly held that "LeCroy's request is not redressable by [t]he All Writs Act." DE601 at 18.

> 1.  *LeCroy cannot use the All Writs Act to circumvent the traditional equitable relief requirements in order to halt an execution*

"The All Writs Act confers on courts extraordinary powers that are firmly circumscribed." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1118, 1132 (11th Cir. 2005) (quotation marks omitted). Relief under the Act is accordingly appropriate only in narrow, "extraordinary" circumstances. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) (quotation marks omitted). In those limited and extraordinary circumstances, courts may use the Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.

27

§ 1651(a). "The purpose of the power codified in [the Act] is to allow courts 'to protect the jurisdiction they already have, derived from some other source.'" *Schiavo*, 403 F.3d at 1229.

Consistent with these principles, the Supreme Court has cautioned against exactly what LeCroy asked the district court to do: using the All Writs Act to circumvent the otherwise applicable injunction and stay standards in order to postpone an execution. In *Dunn v. McNabb*, the Supreme Court vacated an injunction issued under the All Writs Act, explaining that "'[i]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits.' The All Writs Act does not excuse a court from making these findings." 138 S. Ct. 369, 369 (2017) (quoting *Hill*, 547 U.S. at 584); *see also Nken*, 556 U.S. at 425-26, 433 (rejecting argument that relief was available under the All Writs Act and holding that "traditional stay factors" had to be established to obtain relief).

Further confirming that the Act is an extraordinary remedy that requires an applicant to make the traditional showings for equitable relief in order to pause an execution, the Supreme Court has vacated all three of the most recent execution-halting injunctions that this Court has issued or affirmed under the Act. *See McNabb*, 138 S. Ct. at 369 (vacating AWA execution-halting injunction

28

affirmed by this Court in *Grayson v. Alabama DOC*, No. 17-14612, 2017 WL 4767741, at *1 (11th Cir. Oct. 18, 2017) (per curiam)); *Dunn v. Borden*, 138 S. Ct. 312 (2017) (vacating AWA execution-halting injunction issued by this Court in *Burton v. Alabama DOC*, No. 17-11536, 2017 WL 4457572, at *1 (11th Cir. Sept. 29, 2017) (per curiam)); *Dunn v. Melson*, 137 S. Ct. 2237 (2017) (vacating AWA execution-halting injunction issued by this Court in the same litigation); *cf. United States v. Purkey*, No. 20A4, 2020 WL 3988688 (U.S. July 15, 2020) (vacating another court's stay of a federal execution that was not supported by a finding of likelihood of success on the merits).  Indeed, years before this Court addressed the three injunctions that were vacated by the Supreme Court, this Court warned against using the All Writs Act "to evade the requirements for preliminary injunctions" that otherwise govern.  *Schiavo*, 403 F.3d at 1229.

LeCroy's attempt to distinguish *Schiavo*, and his reliance on *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), are unavailing.  In *Klay*, this Court held that the district court had abused its discretion in issuing an All Writs Act injunction that would bar defendants in a civil case from pursuing arbitration of certain claims that were also the subject of a class-action suit filed in that court.  *Id.* at 1095-96.  In other words, the injunction in *Klay* did not survive appellate review even though it issued in part to protect the court's jurisdiction over potential future proceedings before it.  *See id.* at 1099-1100,

29

1110. LeCroy seizes on the language in *Klay* that, "'[w]hereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction,'" and argues that "[i]n this case, the jurisdiction the court would be protecting through the AWA is its authority to appoint counsel under 18 U.S.C. § 3599." Br. 14 (quoting *Klay*, 376 F.3d at 1100). But as explained further below, Section 3599 extends only to appointing and funding competent counsel and does not provide for continued oversight by the district court. "Because the goal of Sections 3599(a) and (e) is competent representation for indigent death-sentenced petitioners, that goal is served once counsel is appointed." *See Baze v. Parker*, 711 F. Supp. 2d 774, 780 (E.D. Ky. 2010), *aff'd*, 632 F.3d 338 (6th Cir. 2011). As such, and contrary to LeCroy's contentions, the district court does not have continuing authority or jurisdiction under Section 3599 to protect.

Further, less than a year after the opinion in *Klay*, this Court again considered the contours of injunctive relief under the All Writs Act in *Schiavo*. Citing *Klay* extensively, this Court made clear that the All Writs Act cannot be used to evade the traditional requirements for equitable relief. *Schiavo*, 403 F.3d at 1229 ("Under our circuit law, the All Writs Act cannot be used to evade the requirements for preliminary injunctions.") (citing *Klay*, 376 F.3d at 1101 n.13); *see also U.S. Army Corps of Engineers*, 424 F.3d at 1131 n.20, 1132 (noting that

30

some of the broad language in *Klay* was dicta and that, in any event, even the district court's express invocation of the All Writs Act in *Klay* "was not enough to sustain the injunctions" it had ordered).  LeCroy responds (Br. 16) that this case is distinguishable from *Schiavo* on its facts.  But the relevant point is that, as in *Schiavo*, the relief that LeCroy seeks is a textbook example of an effort to use the All Writs Act to circumvent the applicable requirements for injunctive relief or a stay—there, Fed. R. Civ. P. 65, and here, the four-factor standard that governs requests to postpone an execution.  Granting that relief, no matter the label he gives it, "would 'confer[] the same legal rights upon [LeCroy] and impose[] the same legal duties upon [the government] as would a [stay or an] . . . injunction.'"  *Schiavo*, 403 F.3d at 1229 (quoting *Fla. Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979)).

Given the consistent line of authority in this Court, the district court correctly determined that "[i]nvoking the All Writs Act does not excuse a movant from making a showing that a stay or injunction . . . is warranted," meaning the traditional requirements for equitable relief.  DE601 at 14.  As discussed in Part III, *infra*, the fact that LeCroy's counsel of choice cannot attend his execution does not infringe on any right conferred by the Constitution, statute, regulation, or court order.  LeCroy's concerns therefore do not come

31

close to establishing the extraordinary circumstances necessary to justify an injunction under the All Writs Act or otherwise.

> 2. *Section 3599 does not confer authority or jurisdiction on the district court to enjoin LeCroy's execution under the All Writs Act*

LeCroy's contention that 18 U.S.C. § 3599 provides a basis for the district court to invoke the All Writs Act to postpone his execution is also unavailing. In relevant part, Section 3599(e) provides that appointed counsel "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." LeCroy does not claim that his counsel is unable to represent him in seeking a stay of execution, clemency, or any other remaining post-conviction proceedings.[9] Rather, LeCroy contends that his rights under Section 3599(e) are being violated simply because his first choice among his three appointed counsel is unable to attend his execution. Br. 13. But nothing in Section 3599's text confers such a right, and LeCroy points to no decision interpreting Section 3599 in such a manner. And for good reason. Section 3599 is designed simply to

---

[9] LeCroy also argued in the district court that his rights under Section 3599 were being infringed because his counsel could not meet with him in person regarding a potential clemency petition. DE593 at 10-11. His counsel subsequently filed a clemency petition on his behalf on August 28, 2020, and therefore that argument is moot. *See* DE599.

provide indigent defendants with appointed counsel, *see Harbison v. Bell*, 556 U.S. 180, 186 (2009), not to involve courts in overseeing the details of counsel's representation up to the moment of an execution.

In fact, LeCroy identifies no court that has interpreted Section 3599 to give a district court supervisory power through the implementation of an execution, as LeCroy requests. To the contrary, courts have held that a district court's authority under Section 3599 extends only to appointing and funding competent counsel. *See Baze*, 711 F. Supp. 2d at 780 ("Because the goal of Sections 3599(a) and (e) is competent representation for indigent death-sentenced petitioners, that goal is served once counsel is appointed."); *see also Bowles v. Desantis*, 934 F.3d 1230, 1242 (11th Cir.) (rejecting an argument that the "innocuously worded" Section 3599(e) created a right to federally appointed counsel's appearance before a state clemency board), *cert. denied*, 140 S. Ct. 26 (2019).[10] Notably, although the United States relied on *Bowles* and *Baze* in its briefing below and the district court cited *Baze*, DE598 at 21; DE601 at 11,

---

[10] Nothing in *McFarland v. Scott*, 512 U.S. 849 (1994) (cited at Br. 12), is to the contrary. The Supreme Court there recognized a federal habeas court's authority to *stay* a state execution where the court was appointing counsel under Section 3599's predecessor to prepare a habeas petition for an indigent capital defendant. 512 U.S. at 859. Such stays are entered in anticipation of future judicial proceedings before the issuing court; they are far removed from the unnamed delay order that LeCroy seeks.

LeCroy fails to address either case in his brief.

Because a district court's power under Section 3599 is only to appoint and fund counsel, other courts have rejected the argument that, once counsel is appointed to assist in post-conviction or clemency proceedings, the All Writs Act authorizes the appointing court to enter orders compelling executive officials to take actions that facilitate the clemency process. In *Baze v. Parker*, 632 F.3d 338 (6th Cir. 2011), the Sixth Circuit summed up its inability to invoke the All Writs Act after appointing counsel under Section 3599:

> Congress, in enacting section 3599, provided federal courts with [the power to appoint and fund counsel] but not [the power to ensure that appointed counsel will use the available funds for investigative purposes], and it is not our place to upset that choice, be it through the All Writs Act or any other means. Because the only jurisdictional power granted to the district court by section 3599 is the power to appoint attorneys and oversee the release of federal funds to those attorneys, the relief that Baze seeks here is not "in aid of" the district court's preexisting jurisdiction under section 3599 and is thus outside the scope of the All Writs Act.

*Id.* at 346. *See also Baze*, 711 F. Supp. 2d at 780 (rejecting the argument that an "order granting appointment" under Section 3599(e) is "rendered 'meaningless' simply because habeas counsel receives less than the entirety of all of the information he or she desires," and declining to enter order under the Act); *Rhines v. Young*, 941 F.3d 894, 895 (8th Cir. 2019) (indicating tentative agreement with the district court's conclusion that it lacked "authority under 18 U.S.C. § 3599 and the All Writs Act . . . to order" state prison officials to allow

34

a capital defendant "to meet with mental health experts retained by appointed counsel for purposes of preparing a clemency application") (emphasis and quotation marks omitted), *cert. denied*, 140 S. Ct. 8 (2019).

The injunction that LeCroy requests would be no more supportable than the orders sought and denied in these cases. Because Section 3599 does not confer jurisdiction on the district court to manage and oversee a capital defendant's representation up through the moment of execution, the district court properly denied LeCroy's motion.

## II. BOP Regulations Neither Confer Nor Recognize Authority For The District Court To Reset LeCroy's Lawfully Scheduled Execution Date

LeCroy contends (Br. 17-19) that, notwithstanding the principles set forth above, the district court retained authority to override the execution date lawfully set by BOP and replace it with a new date of the court's choosing, again without satisfying the standards for an injunction or a stay of execution. LeCroy is incorrect. The district court soundly determined that, even if it initially had the authority to set LeCroy's execution date, it no longer has authority to reset or modify the execution date, where it "delegated the authority to implement or carry out the sentence to the Attorney General in its J&C," and where "the execution has already been assigned a date certain and set for September 22, 2020 by the Attorney General." DE601 at 9-10.

LeCroy's contrary contention, which relies heavily on a proviso (an "[e]xcept" clause) in 28 C.F.R. § 26.3(a), lacks merit for several reasons. First, 28 C.F.R. § 26.3(a) is not the source of the district court's authority to set or delegate an execution date as LeCroy contends. Section 26.3(a) is part of the 1993 DOJ regulations setting forth procedures for implementing death sentences. *See* 28 C.F.R. Chapter 1, Department of Justice, § 26, Death Sentences Procedures. As another district court recognized in a capital case just days ago, those regulations are not a source of judicial authority but instead regulate internal Executive Branch conduct. *See* Doc. 690 at 7, *United States v. Vialva*, No. 99-cr-70 (W.D. Tex. Sept. 11, 2020) (denying an inmate's request to enjoin his execution based on 28 C.F.R. § 26.2, and observing that "reliance on a regulation that governs only DOJ attorneys is misplaced").

Second, the proviso in 28 C.F.R. § 26.3(a)—that BOP can set a date "[e]xcept to the extent a court orders otherwise"—does not give a court superior power over the Executive to set an execution date. That language must instead be read against the background principle, explained above, pp. 5-6, 8, *supra*, that both the Judiciary and the Executive Branch have authority to initially set a date during the implementation of a capital sentence. The provision is thus consistent with the Judiciary's long-standing concurrent—not exclusive—ability to set an execution date initially before the Executive Branch sets a date. It does not

36

confer ongoing jurisdiction on a district court over the scheduling of an execution date where the court has already delegated that authority to the Executive Branch and the Executive Branch has already lawfully scheduled that execution date.

The proviso in Section 26.3(a) does contemplate that a court may, for example, issue a stay of execution, provided that a petitioner makes the required showing. *See* 28 C.F.R. § 26.3(a)(1) ("If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted."). But LeCroy provides no support for the assertion that the 1993 regulations give a district court absolute discretion to change an execution date already set by the Executive Branch. Nor has LeCroy identified any historical practice permitting a federal court to reschedule an execution date lawfully set by the Executive Branch as an exercise of discretion, and the government is not aware of any such precedent. Indeed, as explained above, LeCroy's theory would lead to the anomalous consequence that defendants in his position would never have to meet the stringent standards for obtaining a stay of execution or other injunctive relief in order to delay an execution. The 1993 regulations, in short, cannot reasonably be read to recognize, let alone create, judicial authority to countermand a lawful execution date set by the Executive Branch.

Contrary to LeCroy's contention (Br. 18), the BOP execution protocol adopted in 2019 and recently revised also does not confer authority or jurisdiction for the district court to reset or modify an execution date already properly scheduled by BOP. *See* Docs. 39-1 & 171, *In re Federal of Bureau of Prisons Execution Protocol Cases*, No. 1:19-mc-145 (D.D.C.) (A.R. 1023, 1069, 1093, 1138). Like the 1993 regulations, these newer internal procedures memorialize the longstanding principles and procedures that give the Executive Branch and Judiciary concurrent authority to schedule an execution date in the first instance.

Accordingly, the district court correctly determined that resetting or modifying the execution date already lawfully scheduled by BOP would not "merely 'render[] BOP date-setting regulations non-operational,'" DE601 at 10, and that absent the required showing for a stay of execution or injunctive relief, 28 C.F.R. § 26.3(a) does not provide authority for the district court to reset or modify LeCroy's scheduled execution date.

## III. Even If The District Court Had The Authority To Reset The Execution Date, It Would Have Been A Grave Abuse Of Discretion To Do So In The Circumstances Of This Case

The district court correctly determined that it lacked the authority to reset LeCroy's execution date. But even assuming the court had the authority to replace an execution date set by BOP with a date of its own choosing, and to do so outside the context of a stay of execution or injunction, changing the

38

execution date on the grounds claimed by LeCroy here would have been a manifest abuse of discretion.  LeCroy not only fails to identify the violation of any constitutional or statutory right, but the government has an overwhelming interest in the enforcement of a criminal sentence imposed by a unanimous federal jury after a fair trial and upheld after thorough appellate and post-conviction proceedings.

A.    <u>The Inability Of LeCroy's Lead Counsel To Witness His Execution Does Not Infringe Any Right Conferred By The Constitution, Statute, Regulation, Or Court Order</u>

LeCroy contends that the district court erred in refusing to set a new execution date because his lead counsel (Mr. Martin) is unable to personally witness his execution on the date lawfully scheduled by BOP.  That circumstance, while unfortunate, simply does not justify the extraordinary relief that LeCroy is seeking.

As an initial matter, there is "no law that would support a right to counsel throughout an execution."  *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1117 (10th Cir. 2016).  Thus, any repercussions from the COVID-19 pandemic on the ability of one of LeCroy's counsel to be present at the execution would not impinge on LeCroy's constitutional rights.

LeCroy instead suggests that, under 18 U.S.C. § 3596(a), 26 C.F.R. § 26.4(a) and (c), and Ga. Code Ann. § 17-10-41, he may not be executed unless

his preferred counsel is able to attend the execution in person.  That suggestion, mentioned only in "passing" in the Statement of the Case section of LeCroy's brief (Br. 4), is insufficiently developed and thus forfeited.  *See Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012).  In any event, LeCroy's claim is meritless.

Section 3596(a) incorporates at most state procedures that effectuate death, which does not include attendees at an execution.  Every court of appeals to have interpreted this provision has held that "Section 3596(a) cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure."  *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020), *stay denied*, 2020 WL 3964236 (U.S. July 14, 2020); *see United States v. Mitchell*, No. 20-99009, 2020 WL 4815961, at *2-*3 & n.6 (9th Cir. Aug. 19, 2020); *Protocol Cases*, 955 F.3d at 112; *see also Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.).  Instead, those courts have held that the "manner" of "implementation" of a death sentence under Section 3596(a) "addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death," such as "choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements."  *Mitchell*, 2020 WL 4815961, at *2 (quotation marks omitted).  In *Peterson*, the Seventh Circuit specifically considered state law requirements for witnesses to the execution

and explained that the word "manner" as used in Section 3596(a) "concerns how the sentence is carried out, not who watches."  965 F.3d at 554.  The same result follows here.[11]

LeCroy also argues (Br. 13) that it is appointed counsel's duty to personally attend his execution in order to: (1) ensure LeCroy is mentally competent to proceed with execution; (2) protect LeCroy's First Amendment rights; and (3) be present if any potential legal violations occur during the execution.  The district court acknowledged that the "interests being asserted by Lead Counsel for LeCroy and his wish to fulfill his professional and ethical obligation to his client, to honor LeCroy's request that he be present for the execution, are not only sincere but undoubtedly weighty."  DE601 at 16.  But those interests are not rights, and the fact that two of LeCroy's three lawyers are unable to travel does not create or otherwise establish a violation of

---

[11] Even if the FDPA incorporated Georgia law regarding witnesses to an execution, neither the Georgia statute cited by LeCroy (Ga. Code Ann. § 17-10-41) nor 28 C.F.R. § 26.4(c) provide him any basis for relief.  *See* DE598 at 23-26.  Ga. Code Ann. § 17-10-41 does not require the presence of counsel, nor does it create a right to the presence of particular counsel where the defendant is represented by multiple lawyers.  Likewise, 28 C.F.R. § 26.4(c) merely specifies who may attend an execution; it does not require their attendance for the execution to move forward or create a private right to have them present. As the Seventh Circuit recently explained, the regulation's plain language imposes a *limit* on the attendance of potential third-party witnesses, rather than bestowing any right for them to attend. *See Peterson*, 965 F.3d at 553.

LeCroy's constitutional or statutory rights or the district court's appointment orders. Indeed, LeCroy fails to cite any federal statute, regulation, or order that *mandates* counsel's attendance at his execution for the reasons he claims.

Moreover, even if such a provision existed, LeCroy has in no way been denied the assistance of counsel up to the moment of his execution. While two of LeCroy's attorneys cannot attend his execution for medical reasons, at least one of LeCroy's lawyers in this case *is* able to attend if he so chooses. LeCroy does not dispute that Mr. Ferrell—who has represented LeCroy for more than 18 months, has met with him twice in person, and spoken with him numerous times on the phone—is able to attend LeCroy's execution in person. DE583-84; DE598-2 ¶ 7; DE607 at 19. Mr. Ferrell is well-positioned and capable of assessing any potential mental-health issues at the time of execution,[12] protect what LeCroy characterizes as his First Amendment rights, and observe the execution process.

---

[12] LeCroy has not raised a claim implicating any mental-health issues before this Court, the court below, the United States District Court for the District of Columbia, or the United States District Court for the Southern District of Indiana.

42

B.    The COVID-19 Pandemic Does Not Provide A Basis To Reset The Execution Date

The COVID-19 pandemic does not provide a basis for resetting executions. Five federal death row inmates have been executed since July 14, 2020, all during the COVID-19 pandemic: Daniel Lewis Lee, Wesley Ira Purkey, Dustin Lee Honken, Lezmond Mitchell, and Keith Dwayne Nelson. As noted above, since federal executions resumed this year, both of the other district courts to consider requests to delay executions for pandemic-related reasons have rejected them in well-reasoned orders. *See Lee*, 2020 WL 3921174, at *5 (declining to reset execution date in light of the pandemic where "Congress has not suspended executions . . . [and t]he Executive Branch believes it is worth moving ahead," and "when a delay would have to be a long one to do any good"); Doc. 822 at 7-8, *United States v. Honken*, No. 01-CR-3047 (N.D. Iowa July 14, 2020) (noting the defendant's "concerns regarding access to counsel," but explaining that he argued only "that he has not had ideal access (i.e., in person meetings)," and deferring to "the branch of government tasked with carrying out the execution" because "it is in the best position to weigh the risks associated with COVID-19 and the benefits of proceeding with the execution"). Exercising any available discretion in LeCroy's case would be no more appropriate.

LeCroy rests his contrary argument on the notion that any delay would be brief because he is requesting only a postponement until Spring 2021, a date he keys to the anticipated end of the COVID-19 pandemic and the availability of a vaccine. This Court has recognized many times, however, that any delay at this stage "impose[s] a cost on the State and the family and friends of the murder victim," because "each delay, for its span, is a commutation of a death sentence to one of imprisonment." *Bowles*, 934 F.3d at 1248 (brackets and quotation marks omitted).

More to the point, the pandemic does not yet have a finite end date, as both courts and LeCroy's own expert below have recognized. *See Lee*, 2020 WL 3921174, at *5 (expressing doubt that "we can predict with any certainty when the Covid-19 crisis will subside," and declining to postpone execution); DE593-2 at 14 ¶ 40 (expert declaration). LeCroy cites (Br. 11) congressional testimony regarding the possibility of a vaccine by the end of this year. It remains uncertain, however, when an effective vaccine will be developed, when it might be available, and if a vaccine would allow LeCroy's lead counsel (Mr. Martin) to travel and attend LeCroy's execution. The news surrounding COVID-19 changes rapidly, and more recent comments by the same individual LeCroy quotes (Dr. Anthony Fauci) indicate that any approved vaccine might not be immediately available to everyone and that it may be well into 2021

44

before the United States is able to return to a pre-COVID-19 normal.[13]　The undetermined amount of time necessary to allow LeCroy's top choice among his counsel to attend his execution simply does not provide a basis for resetting the execution date.

C.　The Government Has an Overwhelming Interest in Proceeding with LeCroy's Execution as Scheduled by BOP

Finally, any decision to postpone the execution date would be an abuse of discretion given the countervailing interests at stake.　In particular, the government has an overwhelming interest in the timely enforcement of criminal sentences, such as LeCroy's, imposed by unanimous federal juries after fair trials that have been upheld through appellate and post-conviction proceedings in federal courts.　*Bucklew*, 139 S. Ct. at 1133.　Once post-conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).　Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (citation omitted).　Unduly delaying executions

---

[13] *See, e.g.*, Amanda Watts, *Fauci says normal life may not be back until the end of 2021*, at https://www.cnn.com/2020/09/11/health/fauci-normal-life-2021/index.html.

can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The government's interest in implementing LeCroy's sentence is magnified by the heinous nature of his crimes. Only 47 days after being released from previous terms of state and federal imprisonment, LeCroy broke into Joann Tiesler's home and awaited her return. *LeCroy*, 441 F.3d at 918-20. Once she arrived home, LeCroy did not just take her keys and vehicle to accomplish his plan of absconding from federal supervision; he violently attacked and killed Ms. Tiesler—binding her wrists and ankles with plastic cables, raping her, anally sodomizing her, strangling her with an electrical cord, slitting her throat with a knife, creating a gaping wound from which she bled to death, and plunging his knife into her back five times as she lay face down in her own blood. *Id.* at 919-20.

LeCroy has had ample opportunity to litigate his conviction and sentence and has done so. His conviction and death sentence have been upheld on direct appeal and post-conviction review. *LeCroy*, 441 F.3d at 917-31; *LeCroy*, 739 F.3d 1297. And his current request for relief—which he filed more than three weeks after he received notice of his execution date and less than a month before that date—does not "justify last-minute intervention by a Federal Court," which the Supreme Court recently made clear "'should be the extreme

exception, not the norm.'"  *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at \*2 (U.S. July 14, 2020) (quoting *Bucklew*, 139 S. Ct. at 1134); *see also Barr v. Purkey*, No. 20A10, 2020 WL 4006821, at \*1 (U.S. July 16, 2020) (vacating preliminary injunction entered by court before which inmate still had pending claims).  No further delays in carrying out LeCroy's lawful sentence are justified.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

BYUNG J. PAK
   United States Attorney

BRIAN C. RABBITT
   Acting Assistant Attorney General

CAROLYN "TIPPI" CAIN BURCH
   Assistant U.S. Attorney
   Northern District of Georgia

ROBERT A. ZINK
   Acting Deputy Assistant Attorney General

   /s/ Scott Meisler
SCOTT A.C. MEISLER
PAUL T. CRANE
   Criminal Division, Appellate Section
   U.S. Department of Justice
   950 Pennsylvania Ave. NW, Room 1264
   Washington, DC 20530
   (202) 307-3803
   scott.meisler@usdoj.gov
   paul.crane@usdoj.gov

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Brief for the United States was this day served upon counsel for appellants by notice of electronic filing with the Eleventh Circuit CM/ECF system.

DATED:    SEPTEMBER 14, 2020

s/ Scott Meisler
SCOTT A.C. MEISLER
Counsel for United States

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,277 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally-based Calisto MT typeface using Microsoft Word.

DATED:    SEPTEMBER 14, 2020

s/ Scott Meisler
SCOTT A.C. MEISLER
Counsel for United States