[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-13353
_____

D.C. Docket No. 2:02-cr-00038-RWS-JCF-1

WILLIAM EMMETT LECROY, JR.,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 16, 2020)

Before WILLIAM PRYOR, Chief Judge, NEWSOM, and LUCK, Circuit Judges.

NEWSOM, Circuit Judge:

William Emmett LeCroy, Jr. is a federal death-row inmate.  The Director of the Bureau of Prisons has scheduled LeCroy's execution for September 22, 2020.  LeCroy moved the district court to postpone his execution date by several months on the ground that two of his three appointed lawyers are currently unable to meet with him due to circumstances caused by COVID-19.  The district court denied the motion, and LeCroy now appeals.

We hold that neither the district court nor this Court has the authority to postpone LeCroy's execution—at least absent a demonstration that a stay is warranted, a showing that LeCroy has not attempted to make.  Moreover, and in any event, we hold that LeCroy is not entitled to relief on the merits.  We therefore affirm the district court's ruling.

## I

The following facts are undisputed.  Less than two months after being released from prior terms of state and federal imprisonment, LeCroy bound, raped, and killed Joann Tiesler in Cherry Log, Georgia.  *United States v. LeCroy*, 441 F.3d 914, 918–20 (11th Cir. 2006).  After absconding in Tiesler's car, LeCroy was captured in Minnesota, just shy of the Canadian border.  *Id.* at 920.  In the car, police found a knife stained with Tiesler's blood and other evidence related to the killing.  *Id.*  LeCroy was indicted in the United States District Court for the Northern District of Georgia for taking a motor vehicle by force, violence, and

intimidation resulting in Tiesler's death, in violation of 18 U.S.C. § 2119(3).  *Id.*  A

superseding indictment added special death-eligibility allegations.  *Id.*  At the

conclusion of the sentencing phase, the jury returned a death sentence.  *Id.*

LeCroy was remanded to federal custody at the United States Penitentiary in Terre

Haute, Indiana.  *Id.*

This Court unanimously affirmed LeCroy's conviction and sentence on

direct appeal, *see id.* at 918, and the Supreme Court denied his petition for writ of

certiorari, *see LeCroy v. United States*, 550 U.S. 905 (2007).  LeCroy thereafter

moved the district court for the appointment of counsel; the court granted the

motion and appointed John R. Martin and Sandra L. Michaels.  LeCroy later filed a

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The

district court denied the motion, this Court again unanimously affirmed, *see*

*LeCroy v. United States*, 739 F.3d 1297 (11th Cir. 2014), and the Supreme Court

again denied LeCroy's petition for writ of certiorari, *see LeCroy v. United States*,

575 U.S. 904 (2015).  In 2019, the district court appointed LeCroy a third lawyer,

Stephen Ferrell of Federal Defender Services of Eastern Tennessee, Inc.

On July 31, 2020, LeCroy and his attorneys received notice that the Bureau

had set LeCroy's execution date for September 22, 2020.  More than three weeks

later, on August 24, 2020, LeCroy moved to postpone the execution date by

several months—*i.e.*, until sometime in Spring 2021—on the ground that two of

his three appointed lawyers, Martin and Michaels, were uniquely affected by COVID-19, could not travel to visit him, and accordingly could not (1) properly assist in the preparation and filing of a clemency petition and (2) attend his execution in person.

The district court denied LeCroy's motion. In short, it concluded that if it were "amenable to LeCroy's request and inclined to 'reset' or 'modify' the date of execution, granting the requested relief (i.e., continue or postpone execution) would amount to a stay." The court further explained that LeCroy could not invoke the All Writs Act, 28 U.S.C. § 1651, as a means of circumventing the traditional stay requirements.

LeCroy now appeals.

## II

We must first consider the source and scope of the courts' authority to postpone LeCroy's execution date. The Code of Federal Regulations vests the Bureau Director with broad authority and discretion to set execution dates as an initial matter:

(a) Except to the extent a court orders otherwise, a sentence of death shall be executed:

(1) On a date and at a time designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner that 60 days from the entry of the judgment of death. If the date designated for execution passes by reason of a stay of execution, then a new

4

> date shall be designated promptly by the Director of the Federal
> Bureau of Prisons when the stay is lifted[.]

28 C.F.R. § 26.3(a)(1).  Section 26.4 further provides:

> Except to the extent a court orders otherwise:
>
> (a) The Warden of the designated institution shall notify the prisoner
> under sentence of death of the date designated for execution at least
> 20 days in advance, except when the date follows a postponement
> of fewer than 20 days of a previously scheduled and noticed date of
> execution, in which case the Warden shall notify the prisoner as
> soon as possible.

Here, the Director has set LeCroy's execution for September 22, 2020.  In his motion, LeCroy sought to postpone that date—in particular, he "ask[ed] that the Court schedule [his] execution for a date certain in Spring 2021 . . . ."  Even so, LeCroy insisted in the district court—and continues to maintain—that his was "not a Motion for a Stay of Execution or an Injunction."

We disagree.  Although LeCroy's motion carefully avoided using the word "stay"—instead repeatedly asking the district court to "reset" or "modify" his execution date—LeCroy has failed to explain how his pleading can sensibly be understood as anything other than a request to *stay* his execution.  As the Supreme Court has explained, a stay operates by "halting or postponing some portion of the proceeding, or . . . temporarily divesting an order of enforceability."  *Nken v. Holder*, 556 U.S. 418, 428 (2009); *see also Stay,* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "stay" as the "postponement or halting of a proceeding,

judgment, or the like" and an "order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding"). That is *precisely* the relief that LeCroy seeks. A stay by any other means is still a stay.

A stay of execution is an equitable remedy that "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Rather, under our precedent, a court may issue a stay of execution "only if [the movant] establishes that (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; *and* (4) if issued, the injunction would not be adverse to the public interest." *Price v. Comm'r, Ala. Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (citations and quotation marks omitted). LeCroy has not even attempted to satisfy—and indeed, has sworn off—these requirements.

Nor does LeCroy identify any other source of authority—statutory, regulatory, or otherwise—that would empower a federal court to "reset" or "modify" his execution date. It is true, as LeCroy says, that 28 C.F.R. §§ 26.3 and 26.4 prescribe a role for the judiciary in setting execution dates. *See* 28 C.F.R. § 26.3(a) ("Except to the extent a court orders otherwise, a sentence of death shall be executed . . . ."); *id.* § 26.4 ("Except to the extent a court orders otherwise . . . ."). As does the Bureau of Prisons Execution Protocol. *See* Department of Justice, Bureau of Prisons Execution Protocol 5 (2004) ("If the execution date is set by a

6

judge, the Warden will notify the condemned individual, in writing, as soon as possible."). It may well be, as LeCroy asserts, that both these regulations and the Protocol reflect an understanding that courts historically played some concurrent role in—had some shared responsibility for—setting execution dates in the first instance. *Cf. United States v. Lee,* No. 4:97-cr-00243, 2020 WL 3921174, at *3 (E.D. Ark. July 10, 2020). And at the very least, the regulations and the Protocol sensibly recognize—as they must—a court's authority to stay or enjoin a scheduled execution. But we are confident that they do *not* vest courts with a free-floating, standardless reservoir of authority to postpone an already-scheduled execution, free and clear of the traditional stay standard. If they did, no death-sentenced inmate would ever again go to the trouble of trying to satisfy the stay factors. That cannot be the law.

Nor does the All Writs Act, which LeCroy invokes alongside §§ 26.3 and 26.4 and the Protocol, independently authorize a federal court to modify his execution date—independently, we mean, of a showing that the traditional stay factors have been satisfied. The Act establishes that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This Court, though, has carefully confined the Act's office to "extraordinary circumstances." *United States v. Machado*, 465 F.3d

7

1301, 1308 (11th Cir. 2006), *overruled on other grounds by United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009).  Moreover, the Act does not absolve LeCroy of his responsibility to make the showing necessary to obtain a stay.  *See Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017) (observing that the All Writs Act "does not excuse a court from making" injunction- or stay-related related findings); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("Under our circuit law, the All Writs Act cannot be used to evade the requirements for preliminary injunctions.").[1]

LeCroy has not even attempted to satisfy the requirements necessary to stay his execution—even temporarily—and he has identified no authority that would otherwise permit a federal court to "reset" or "modify" his execution date.  Accordingly, we hold that the district court correctly concluded that it lacked the authority to postpone LeCroy's execution.[2]

---

[1] LeCroy separately argues that the All Writs Act protects the court's jurisdiction under 18 U.S.C. § 3599 to appoint counsel.  We disagree.  Section 3599 does not imbue the court with *continuing* authority or jurisdiction that the Act may then be invoked to protect.  *See Baze v. Parker*, 632 F.3d 338, 346 (6th Cir. 2011) ("Because the only jurisdictional power granted to the district court by section 3599 is the power to appoint attorneys and oversee the release of federal funds to those attorneys, the relief that Baze seeks here is not 'in aid of' the district court's preexisting jurisdiction under section 3599 and is thus outside the scope of the All Writs Act.").

[2] Even if LeCroy's request were more properly viewed as a request for an injunction, rather than a stay, the same result would obtain.  LeCroy must still satisfy the traditional requirements for obtaining an injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."); *Swain v. Junior*, 961 F.3d 1276, 1284 (11th Cir. 2020) (same).  The All Writs Act does not excuse LeCroy from satisfying these requirements.  *Schiavo*, 403 F.3d at 1229.

## III

LeCroy is not entitled to the relief he seeks, in any event.  Before the district court and in this Court, LeCroy has asserted two grounds for postponing his execution: (1) two of his three appointed lawyers are currently unable to meet with him face-to-face to assist in the preparation and filing of a clemency petition; and (2) two of his three appointed lawyers are currently unable to be on hand in person to witness his scheduled execution.

As an initial matter, we reiterate our "consistent[ holding] that there is no federal constitutional right to counsel in postconviction proceedings."  *Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006).  Nor (for better or worse) does the Constitution guarantee a condemned inmate the right to have his lawyer present at his execution.  If LeCroy is entitled to relief, therefore, it must be on the basis of some statute or regulation.

Before the district court, LeCroy first asserted that he had a statutory right to assistance with his clemency petition under 18 U.S.C. § 3599(e).  That statute provides that appointed counsel

> shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and *shall also represent the defendant in such competency proceedings and*

9

> *proceedings for executive or other clemency* as may be available to the defendant.

18 U.S.C. § 3599(e) (emphasis added).  The problems for LeCroy are (1) that nothing in § 3599(e) specifies in-person representation and (2) that, despite the heightened risks that COVID-19 poses for two of his three appointed lawyers, he still has ready access to the "represent[ation]" that § 3599(e) contemplates.  Not only can LeCroy avail himself of unmonitored telephone calls and face-to-face videoconferences with all three of his lawyers, but he can also meet with one of them, Ferrell, in person at the prison.[3]

Both before the district court and in this Court, LeCroy has separately pointed to 18 U.S.C. § 3596(a) in support of his argument that his attorney must be on hand to personally witness his execution.  Section 3596(a) states that an execution shall be implemented "in the manner prescribed by the law of the State in which the sentence is imposed."  This provision, LeCroy contends, incorporates Ga. Code Ann. § 17-10-41, which states that "the convicted person may request the presence of his or her counsel."  In support of this argument, LeCroy cites *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020).

---

[3] Nothing in the record indicates that COVID-19 poses any unique (or even heightened) risk to Ferrell.

10

Although the separate opinions in *Execution Protocol Cases* posit varying interpretations of § 3596(a), even the dissenting opinion there—which embraced the most capacious reading—acknowledged that § 3596(a) requires the Bureau to follow only those state execution procedures that "effectuat[e] the death, . . . including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Id*. at 151 (Tatel, J., dissenting) (alterations and citations omitted). Other circuits have interpreted § 3596(a) in a similarly (if not more) restrictive manner. *See, e.g.*, *United States v. Mitchell*, No. 20-99009, 2020 WL 4815961, at *2–3 (9th Cir. Aug. 19, 2020); *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020) ("We do not understand the word 'manner' as used in § 3596(a) to refer to details such as witnesses. The word concerns how the sentence is carried out, not who watches."). We needn't decide today precisely what the phrase "in the manner prescribed by the law of the State in which the sentence is imposed" entails—whether it refers only to top-line methods, execution procedures more generally, etc. Whatever that phrase means, we are confident that it does not extend to ensuring a lawyer's presence at execution.

Accordingly, we hold that even if this Court had the authority to postpone LeCroy's execution date absent a showing that a stay is warranted, LeCroy is not entitled to relief on the merits.

11

## IV

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**