**DEATH PENALTY CASE – EXECUTION DATE SEPTEMBER 22, 2020**
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

### CASE NO. 20-13353-P

_____

WILLIAM EMMETT LECROY, JR.,
Appellant/Petitioner,

v.

UNITED STATES OF AMERICA,
Appellee/Respondent.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, GAINESVILLE DIVISION

_____

### APPELLANT'S PETITION FOR REHEARING EN BANC

_____

JOHN R. MARTIN
Martin Brothers, P.C.
Georgia Bar No.  473325
1099 St. Louis Pl.
Atlanta, GA  30306
(404) 433-7446
jack@martinbroslaw.com

STEPHEN A. FERRELL
Federal Defender Services of
 Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
(865) 637-7979
Stephen_Ferrell@fd.org

SANDRA MICHAELS
Georgia Bar No.  504014
965 Virginia Avenue, N.E.
Atlanta, GA 30306
(404) 312-5781
SLMichaelsLaw@gmail.com

**ATTORNEYS FOR APPELLANT**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

WILLIAM EMMETT LECROY, JR.,　　＊
　　　　　　　　　　　　　　　　＊
　Appellant/Petitioner,　　　　　　＊
　　　　　　　　　　　　　　　　＊
v.　　　　　　　　　　　　　　　＊　　CASE NO. 20-13353-P
　　　　　　　　　　　　　　　　＊
　　　　　　　　　　　　　　　　＊
UNITED STATES OF AMERICA　　＊
　　　　　　　　　　　　　　　　＊
　Appellee/Respondent.　　　　　　＊

**CERTIFICATE OF INTERESTED PERSONS**

The Appellant certifies that the following persons have an interest in the outcome of the instant appeal:

Carolyn Cain Burch – Appellee's counsel

Stephen Ferrell – Appellant's counsel

William Emmett LeCroy, Jr. – Appellant

John R. Martin – Appellant's counsel

Scott Meisler – Appellee's counsel

Sandra Michaels – Appellant's counsel

Richard W. Story – District Court Judge

Joann Tiesler – Victim

i

## **RULE 35 STATEMENT OF COUNSEL**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decision(s) of the Supreme Court of the United States or the precedents of this circuit particularly, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court.

/s/Stephen A. Ferrell
Stephen A. Ferrell

ATTORNEY OF RECORD FOR
WILLIAM EMMETT LECROY, JR.

ii

# TABLE OF CONTENTS

**Certificate of Interested Persons** ................................................................ i

**Rule 35 Statement of Counsel** ................................................................... ii

**Table of Contents** ....................................................................................... iii

**Table of Authorities** ................................................................................... iv

**Statement of the Issues** ...............................................................................1

**Prior Proceedings and Disposition of the Case** .........................................1

**Argument and Authority**.............................................................................4

    I.   Introduction ..........................................................................................4

    II.  The District Court Must Retain Discretion to Modify Execution Dates in the Same Manner It Modifies Other Orders. ............................................................4

    III. The panel's holding that the District Court has no power to reset an execution date unless the condemned inmate can meet the standard for a stay of execution is incorrect.  The panel's holding is in conflict with this circuit's precedent, *Klay v. United Healthgroup, Inc*., 376 F.3d 1092 (11th Cir. 2004).....9

**Conclusion**.................................................................................................14

**Certificate of Compliance**........................................................................15

**Certificate of Service**...............................................................................15

# TABLE OF CITATIONS

Page(s)

## Federal Cases

*Adams v. U.S. ex rel. McCann*,
  317 U.S. 269 (1942)................................................................ 10

Caleb Cushing,
  7 Op. Atty. Gen. 561 (1855) .................................................. 5

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)................................................................ 6

*Dunn v. McNabb*,
  138 S. Ct. 369 (2017)............................................................. 11

*F.T.C. v. AbbVie Prod. LLC*,
  713 F.3d 54 (11th Cir. 2013) .................................................. 8

*Harris v. Reverse Mortg. Sols. Inc.*,
  800 F. App'x 708 (11th Cir. 2020)........................................... 8

*Hill v. McDonough*,
  547 U.S. 573 (2006)................................................................ 11

J.N. Macpherson Berrien,
  20 Op. Atty. Gen. 344 (1830) (1830) ..................................... 5

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) .......................................Passim

*Nken v. Holder*,
  566 U.S. (2009)....................................................................... 7

*Price v. Comm'r, Dep't of Corr.*,
  920 F.3d 1317 (11th Cir. 2019) .............................................. 11

*Rel. Schindler v. Schiavo*,
  403 F.3d 1223 (11th Cir. 2005) .............................................. 12

iv

*Rufo v. Inmates of Suffolk Cty. Jail*,
  502 U.S. 367 (1992)............................................................................ 8

*Siegel v. LePore*,
  234 F.3d 1163 (11th Cir. 2000) ........................................................ 10

*United States v. Jackson*,
  691 F. App'x 595 (11th Cir. 2017)..................................................... 8

*United States v. Matthaei*,
  2020 WL 3268273 (D. Idaho June 16, 2020)..................................... 8

**Federal Statutes**

18 U.S.C. § 3596 (a) ............................................................................ 2

18 U.S.C. § 3599.............................................................................. 1, 12

18 U.S.C. § 3599 (a) (2)........................................................................ 2

28 U.S.C. § 1651(a) ................................................................... 1, 4, 6, 9

**State Statutes**

O.C.G.A. § 17-10-41............................................................................. 2

**Federal Rules**

Fed. R. App. P. 32(a)(7)...................................................................... 15

**Federal Regulations**

28 C.F.R. pt. 26 ................................................................................ 3, 6

28 C.F.R. § 26.4 (b) and (c) ................................................................. 2

58 Fed. Reg. 4898-01 (Jan. 19, 1993)............................................... 6, 7

Section 26.4........................................................................................... 7

## STATEMENT OF THE ISSUES

Because this panel's opinion in this case conflicts with the traditional authority of district courts to supervise the implementation of their orders, and because it further conflicts with this Court's prior precedent (*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)) concerning orders under the All Writs Act, 28 U.S.C. § 1651(a), rehearing, or rehearing en banc is required.

## PRIOR PROCEEDINGS AND DISPOSITION OF THE CASE

Appellant, William LeCroy, was prosecuted in the Northern District of Georgia for a capital murder.  (Doc 1).  He was convicted and sentenced to death.  (Docs 472, 473, 474).  On May 25, 2007 the District Court appointed undersigned counsel John R. Martin and Sandra Michaels to represent him in all post conviction proceedings.  (Docs 477, 478, 479).  Mr. Martin was appointed as lead counsel.  (Doc 479).  In 2019, Stephen Ferrell of Federal Defender Services of Eastern Tennessee was appointed as additional counsel in support of previously appointed counsel.  (Doc 584).  The appointments were made pursuant to 18 U.S.C. § 3599, which, among other things, holds that Mr. LeCroy is entitled to assistance from his attorneys "throughout **every** subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available

1

post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599 (a) (2) (emphasis added).

Mr. Martin was diagnosed in 2010 with a form of leukemia that is believed to be caused by his exposure to Agent Orange during his service in Vietnam. (Doc 593-1, Ex.1; Doc 607 - Pgs 6-8). Although the condition is manageable, because of the worldwide pandemic of COVID-19, he is, on directions of his physician, unable to travel, and due to his severely compromised immune system, he should not be around groups of people. This serious health condition is thus compounded by the pandemic and could result in death or severe illness if Mr. Martin is exposed to and contracts COVID-19.

Mr. LeCroy has specifically requested his long time lead attorney, Mr. Martin, be present at his execution. (Doc 607 - Pgs 8-11). This is Mr. LeCroy's right under Georgia law which federal law requires to be followed at any execution and Bureau of Prison regulations. O.C.G.A. § 17-10-41; 18 U.S.C. § 3596 (a); 28 C.F.R. § 26.4 (b) and (c). Under the appointment pursuant to 18 U.S.C. § 3599(a)(2), Mr. Martin has a legal and ethical obligation to travel to Terre Haute, Indiana, where the execution is to occur to be present at the execution or to be present during the days

leading up to his execution, an obligation that is impossible for him to perform due to the extraordinary situation created by the pandemic.  (Doc 607 - Pgs 6-11).

On August 1, 2020, the United States filed a "Notice Regarding Execution Date" advising that the Director of the Federal Bureau of Prisons ("BOP"), upon the direction of the Attorney General, has scheduled the execution of Appellant, in accordance with 28 C.F.R. § 26, to take place on September 22, 2020.  Appellant's counsel filed a Motion to Reset the Execution date to a future date when lead counsel Martin would be able to travel and consult with Appellant and to be present at the execution until the extraordinary circumstances caused by the global COVID-19 pandemic have subsided.  (Doc 593).

The district court held a hearing but ultimately denied the Motion.  (Doc 601). In its opinion, the district court found that lead counsel's "wish to fulfill his professional and ethical obligation to his client, to honor LeCroy's request that he be present for the execution, are not only sincere but undoubtedly weighty."  The court further found that counsel's arguments were "compelling."  (*Id*. at Pg 16). However, the district court found it had no choice but to treat the motion as a motion for stay of execution and that, without a showing of a likelihood of success, it had no choice but to deny it.  (*Id*. at Pg 18).

Appellant LeCroy filed an appeal to this Court.  After briefing, the panel denied relief, holding that "neither the district court nor this Court has the authority

3

to postpone LeCroy's execution—at least absent a demonstration that a stay is warranted." Opinion at 2. This Motion follows.

## **ARGUMENT AND AUTHORITY**

### **I.      Introduction**

This Court must grant rehearing in this case to consider the implications of the panel's holding that "neither the district court nor this Court has the authority to postpone LeCroy's execution—at least absent a demonstration that a stay is warranted." Opinion at 2. The panel's holding that, in **every** situation, a court must consider the traditional stay factors could have far-reaching implications that should not apply in every situation where the court, in the exercise of its discretion, recognizes the need to change an execution date. Furthermore, it is in conflict with this Court's holding in *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004). *Klay* recognized the existence, and indeed the importance, of court orders based on the All Writs Act, 28 U.S.C. § 1651(a). Those orders, admittedly reserved for situations involving extraordinary circumstances, cannot be unavailable to capital defendants facing execution. However, this panel's holding would put them beyond the reach of capital defendants regardless of the circumstances involved.

### **II.     The District Court Must Retain Discretion to Modify Execution Dates in the Same Manner It Modifies Other Orders.**

The panel improperly rejected LeCroy's argument by construing his modification request as a request for a stay of execution and stating that he failed to

"identify any other source of authority—statutory, regulatory, or otherwise—that would empower the federal court to 'reset' or 'modify' his execution date." Opinion at 5-6. The panel's misunderstanding of these two points led it to an erroneous conclusion.

First, the panel failed to recognize that the authority for setting LeCroy's date in this case flows from the court, not the reverse. The panel appeared to believe that the BOP set LeCroy's date of its own accord, independent and separate from the power of the court. Thus the panel required LeCroy to justify the district court's role in modifying the execution date. This misunderstands the law. The C.F.R. provisions cited by the panel do not "prescribe a role for the judiciary in setting execution dates." Opinion at 6. The C.F.R.s, in fact, do the opposite: they purport to create a role for the BOP in setting a date.[1] The court's authority is primary; the BOP's is derivative.

---

[1] The panel also asserts that "courts historically played some concurrent role in— had some shared responsibility for—setting execution dates in the first instance." Opinion at 7. Though this was true until 1830, President Jackson, through his Attorney General, issued an order that the President would no longer set execution dates. J.N. Macpherson Berrien, 20 Op. Atty. Gen. 344 (1830). In the intervening decades, President Andrew Jackson's order remained controlling law and was incorporated into federal court practice. *See* Caleb Cushing, 7 Op. Atty. Gen. 561 (1855) ("Such is now the established practice. The court sentences, and fixes the day of execution; and unless the President interpose, the Marshal of the United States proceeds to execution in due time.") This remains the law to this day and was only supplemented by the promulgation of the C.F.R.s.

This Court need not take LeCroy's word on this; DOJ itself has explicitly admitted this. DOJ's rules for "Implementation of Death Sentences in Federal Cases"—the C.F.R.s cited by the panel and the basis for BOP's "notification" letter to LeCroy of his execution date—clearly show DOJ's understanding that BOP's authority to set an execution date is solely derivative of the long-standing power of the federal district court. *See* 58 Fed. Reg. 4898-01 (Jan. 19, 1993) (codified at 28 C.F.R. pt. 26). For instance, in response to a comment during the rulemaking process suggesting that the implementation regulations were an improper delegation of congressional authority in violation of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), DOJ stated that no such problem existed because it was not based on congressional authorization at all:

> As for the Justice Department's "delegated authority," the Department does not need explicit authority to issue regulations establishing death penalty procedures. The Department is authorized *to rely on the authority of the federal courts*, **acting pursuant to the All Writs Act, 28 U.S.C. § 1651(a),** *to order* that their sentences be implemented. *Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.*

58 Fed. Reg. 4898-01, 4899-900 (emphasis added). In other words, the Department did not need Congress to delegate authority because its authority was derived from the sentencing court if and when that court gave it permission to act.

DOJ's responses to other comments made during rulemaking further demonstrate its recognition that its date-setting authority was not only derivative of,

6

but also subordinate to, the federal district court. Not only was it abundantly clear that DOJ acknowledged that compliance with § 26.2 was necessary to avoid the Department's acting outside the scope of its legal power, it also accepted that its authority could be superseded by the district court:

> *…far from contemplating the unilateral exercise of executive authority…the proposed rule directs government attorneys to seek a court order directing that execution be by lethal injection, and at a date and place determined by the Department of Justice. § 26.2.* Indeed, the very provision the comments find an "invasion" of the prerogatives of the federal judiciary begin with the qualifying language, "Except to the extent a court orders otherwise * * *" § 26.3(a)(1). Section 26.4 also begins with that qualifier.

58 Fed. Reg. 4898-01, 4900 (emphasis added).

The text of DOJ's own rules and its articulated rationale for them thus represent an express recognition of the district court's firmly rooted, and exclusive, authority to implement death sentences. LeCroy did not need to identify another source of authority empowering the court to modify his execution date because the authority for that date was inherent in the court itself.

Second, because the setting of an execution date concerns implementation of the court's judgment, there is a distinct legal difference between a modification and a stay/injunction. The panel cites to language in *Nken v. Holder*, 566 U.S. 418 (2009) to hold that any judicial action "halting or postponing some portion of the proceeding" is a stay. Order at 5-6. But this is too narrow a reading. Immediately after the quoted language in *Nken*, the Supreme Court notes that a stay "achieves this

result by temporarily suspending the authority to act…" *Id.* at 428-29. This makes sense; a stay of the mandate pending appeal, for example, suspends enforcement of a decision until further review. However, LeCroy did not request the suspension of "authority to act." Indeed, in this motion he did not contest the authority to act at all; he just asked the court to set the action on a different day. By any fair reading that is a modification, not a stay.

Indeed, other areas of the law bear out this distinction. After a defendant is convicted, the court may set a future date for self-surrender. Similar to LeCroy's situation, that means the imposition of a sentence of criminal judgment will occur on a later date. There is no question in such cases that the sentencing court has the authority to extend that self-surrender date without establishing the *Nken* stay factors. *See e.g. United States v. Woolley*, No. 9:19-cr-800932020, WL 4904210 at *1 (S.D. Fla. Aug. 20, 2020) (court "extended the self-surrender date to August 31, 2020"); *United States v. Matthaei*, No. 1:19-CR-00243-BLW, 2020 WL 3268273, at *1 (D. Idaho June 16, 2020) (court "extended self-surrender deadline 90 days due to concerns about impacts of Covid-19").

There are myriad other situations where a court may make modifications without being required to establish the stay factors. A court may modify a scheduling order for example. *See Harris v. Reverse Mortg. Sols. Inc.*, 800 F. App'x 708, 711 (11th Cir. 2020).  Or it may modify a consent decree, *see Rufo v. Inmates of Suffolk*

8

*Cty. Jail*, 502 U.S. 367 (1992), or supervised release. *See United States v. Jackson*, 691 F. App'x 595, 596 (11th Cir. 2017).  Or it may modify a protective order. *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 66 (11th Cir. 2013).  Each of these situations "halt[s] or postpone[s] some portion of the proceeding" but they are not stays.  The panel's failure to recognize this distinction was error.

**III.    The panel's holding that the District Court has no power to reset an execution date unless the condemned inmate can meet the standard for a stay of execution is incorrect.  The panel's holding is in conflict with this circuit's precedent, *Klay v. United Healthgroup, Inc*., 376 F.3d 1092 (11th Cir. 2004).**

Even if this Court construes Appellant's request to reset his execution date as a request for an "injunction," the panel's application of the traditional stay standard, *see* Order at 6, conflicts with this circuit's precedent and the standards set forth in *Klay v. United Healthgroup, Inc*., 376 F.3d 1092 (11th Cir. 2004), where this Court rightly recognized that not all "injunctions" are the same thing, nor do they carry with them the same requirements. Because the panel failed to recognize that controlling authority, this Court must grant rehearing.

There are at least three different types of injunctions a federal court may issue. *Klay*, 376 F.3d at 1097.  The *Klay* court recognized the "traditional" injunction, "statutory" injunction, and an injunction under 28 U.S.C. § 1651(a), the All Writs Act. *Id*. at 1097-99.  In differentiating the three, the Court noted that the traditional injunction requires the movant to make a showing that (1) it has a substantial

9

likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Klay*, 376 F.3d at 1097, citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). As for a statutory injunction, the Court stated, "when Congress authorizes injunctive relief, it implicitly requires that the traditional requirements for an injunction be met in addition to any elements explicitly specified in the statute." *Klay*, 376 F.3d at 1098 (citation omitted).

However, the Court then recognized that a movant under the All Writs Act will have to meet a very different standard: A court may grant a writ under this Act whenever it is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it," and not only when it is "'necessary' in the sense that the court could not otherwise physically discharge its ... duties." *Id.* at 1100, citing *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 273 (1942). Thus, while "traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction." *Klay*, 376 F.3d at 1100. For this reason, "[t]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's

10

traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Id.*

Appellant's request to move his execution date because counsel would not be able to fulfill their appointed duties falls squarely into this category and is thus outside the requirements of a traditional injunction or stay of execution.  Appellant asked the district court to move his execution date, not based on any cause of action, but rather to to enforce its order of appointment of counsel under the All Writs Act. *See Klay*, 376 F.3d at 1100.  As the panel recognized, he made no attempt to show a likelihood of success. This was for good reason because, he has no other cause of action.  Rather, he sought to protect a past order (appointment of counsel), "the integrity of which is being threatened by someone else's action or behavior."  *Id.*

The panel's failure to recognize the requirements of an injunction under the All Writs Act thus conflicts with the binding opinion announced in *Klay*.  All of the cases relied on by the panel can be distinguished from the present case because they involved situations where the moving party needed to show a "likelihood of success" on some other issue.  *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) (inmate challenging method of execution must satisfy the requirements for a stay); *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (same); *Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017) (same).

11

The *Schiavo* case, relied upon by both the district court and the panel is no different. In fact, the *Schiavo* court recognized the fact that the movants sought an injunction so that they could litigate the legality of the Defendant's actions. This provided a "textbook example" of a party seeking an injunction under the All Writs Act when a traditional injunction was required. *Schiavo ex. Rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005). This is because the plaintiffs sought, "to preserve the status quo and prevent allegedly irreparable injury until the court had the opportunity to decide whether to issue a permanent injunction." *Schiavo ex. Rel. Schindler*, citing *Klay*, 376 F.3d at 1101 n. 13. The facts of this case are entirely different.

Under the All Writs Act, a movant need not state a claim to be redressed, but rather, "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Klay*, 376 F.3d at 1101. Here, Appellant was not asking that the district court move his execution date in order to preserve the status quo so that he could vindicate some other right, as would be the case involving a "traditional injunction." *Id.* at 1097. Instead, he asked the court to reset his execution date so that counsel could fulfill their statutory duties pursuant to the district court's appointment order. Appellant has therefore properly invoked its authority to enforce an already-issued order. This was the appointment of counsel in a death penalty case, that had been

12

granted by the district court under 18 U.S.C. § 3599. *See Klay*, 376 F.3d at 1099 ("[T]he [All Writs] Act allows [courts] to safeguard . . . already-issued orders and judgments.").

An order under the All Writs Act is indeed only appropriate in extraordinary circumstances. However, those circumstances are manifest in the present case. The confluence of a worldwide pandemic caused by a heretofore unknown virus with lead counsel's underlying chronic illness is not one that will present itself with any regularity. Unfortunately, however, natural disasters and novel illnesses occur with enough frequency for the panel opinion and its conflict with the *Klay* decision to be problematic for district courts in the future. Surely, this Court did not mean to say that district courts faced with pandemics, hurricanes, forest fires or some other unforeseen event, do not retain any ability to manage practical concerns that these events give rise to. A rule that holds that every resetting of an execution date requires the court to find that the condemned prisoner must show "a likelihood of success" on some other claim will cause district courts to be hamstrung when they recognize that the interests of justice require a resetting because of the effects of some event no one foresaw.[2] It is for such cases that the *Klay* court recognized the importance

---

[2] Such a rule to the present case is doubly problematic because it would require an Article III judge to defer enforcement of a federal court judgment to the unconfirmed head of an executive agency, namely the Director of the BOP, who set the execution date.    Cf.    https://www.republicanleader.senate.gov/newsroom/press-releases/senators-mcconnell-lee-sinema-paul-introduce-bipartisan-bill-to-increase-

13

of an injunction under the All Writs Act.   The panel's opinion in this case undermines that decision.

### CONCLUSION

For the above-cited reasons, Appellant, William LeCroy asks that this Court reconsider its decision in this case and that it reverse the ruling of the district court. This 18th day of September, 2020.

Respectfully submitted,

BY:    /s/ John R. Martin
John R. Martin
1099 St. Louis Pl
Atlanta, Georgia 30306
(404) 433-7446
jack@martinbroslaw.com

/s/Sandra Michaels
Sandra Michaels
965 Virginia Avenue NE
Atlanta, Georgia 30306
(404) 312-5781
SLMichaelsLaw@gmail.com

/s/Stephen Ferrell
Stephen Ferrell
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
(865) 637-7979
Stephen_Ferrell@fd.org

**ATTORNEYS FOR APPELLANT LECROY**

accountability-at-federal-prisons (Senators McConnell, Lee, Sinema, and Paul proposing legislation to create accountability and transparency in the BOP).

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Fed. R. App. P. 32(a)(7), I certify that the number of words in this brief, as counted by my word-processing system, is 3,427 words.

/s/Stephen A. Ferrell
Stephen A. Ferrell

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 18, 2020, the foregoing **APPELLANT'S PETITION FOR REHEARING EN BANC** was filed electronically. Service was made upon Filing Users through the CM/ECF Electronic Filing System.

s/Stephen A. Ferrell
Stephen A. Ferrell