**CAPITAL CASE**

**EXECUTION SCHEDULED FOR 6:00 P.M. (EDT) SEPTEMBER 22, 2020**

No. _____

_____

IN THE SUPREME COURT OF THE UNITED STATES

_____

WILLIAM EMMETT LECROY, JR.,

*Petitioner,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

ON PETITION FOR WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**PETITION FOR WRIT OF CERTIORARI**

JOHN R. MARTIN
Martin Brothers, P.C.
Georgia Bar No.  473325
1099 St. Louis Pl.
Atlanta, GA  30306
(404) 433-7446
jack@martinbroslaw.com

STEPHEN FERRELL
Federal Defender Services
  of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
(865) 637-7979
Stephen_Ferrell@fd.org

SANDRA MICHAELS
Georgia Bar No.  504014
965 Virginia Avenue, N.E.
Atlanta, GA 30306
(404) 312-5781
SLMichaelsLaw@gmail.com

*Counsel of Record for Petitioner William Emmett LeCroy, Jr.*

**CAPITAL CASE**

## <u>QUESTION PRESENTED</u>

May a federal district court reset or modify an execution date for a federally death-sentenced inmate in order to manage unforeseen exigent circumstances under the All Writs Act, 28 U.S.C. § 1651(a), without the traditional factors for a stay of execution or injunction?

## TABLE OF CONTENTS

QUESTION PRESENTED ..........................................................................................i

TABLE OF CONTENTS..........................................................................................ii

TABLE OF AUTHORITIES ..................................................................................iii

OPINIONS BELOW ............................................................................................. 1

JURISDICTION.................................................................................................... 1

CONSTITUTIONAL PROVISIONS AND STATUTES INVOLVED......................... 2

STATEMENT OF THE CASE............................................................................... 4

REASONS FOR GRANTING THE WRIT .............................................................. 7

A federal district court has the authority to reset or modify an execution date for a federally death-sentenced inmate in order to manage unforeseen exigent circumstances unrelated to the conviction or sentence and without considering the traditional factors for a stay of execution or injunction .................................... 7

I.   The District Court Must Retain Discretion to Modify Execution Dates in the Same Manner It Modifies Other Orders............................................................ 8

II.   The District Court Has the Authority Under the All Writs Act to Modify Appellant's Execution Date to Enforce Its Order Appointing Counsel. ............. 12

CONCLUSION.................................................................................................. 18

## LIST OF APPENDICES

Appendix A: Opinion, *William Emmett LeCroy, Jr., v. United States of America*, No. 20-12253-P, 2020 WL 5542483 (11th Cir. Sept. 16, 2020)

Appendix B: Order, Doc. 601, *United States of America v. LeCroy*, No. 2:02-CR-38-RWS-SSC, No. 2:08-cv-83-RWS (N.D. Ga. Sept. 4, 2020)

Appendix C: Order, *William Emmett LeCroy, Jr., v. United States of America*, No. 20-12253-P, 2020 WL 5542483 (11th Cir. Sept. 21, 2020)

Appendix D: Order, *William Emmett LeCroy, Jr., v. United States of America*, No. 20-12253-P, 2020 WL 5542483 (11th Cir. Sept. 22, 2020)

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Caleb Cushing,
  7 Op. Atty. Gen. 561 (1855)..................................................................................9

*Carlisle v. United States,*
  517 U.S. 416 (1996) .......................................................................................16

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) .........................................................................................9

*Clinton v. Goldsmith,*
  526 U.S. 529 (1999) .......................................................................................16

*Dunn v. McNabb,*
  138 S. Ct. 369 (2017) ................................................................................14, 16

*F.T.C. v. AbbVie Prod. LLC,*
  713 F.3d 54 (11th Cir. 2013) .........................................................................12

*Harris v. Reverse Mortg. Sols. Inc.,*
  800 F. App'x 708 (11th Cir. 2020).................................................................12

*Hill v. McDonough,*
  547 U.S. 573 (2006) .......................................................................................16

J.N. Macpherson Berrien,
  20 Op. Atty. Gen. 344 (1830) (1830) ...............................................................9

*Klay v. United Healthgroup, Inc.,*
  376 F.3d 1092 (11th Cir. 2004) .....................................................................15

*McFarland v. Scott,*
  512 U.S. 849 (1994) .......................................................................................13

*Nken v. Holder,*
  556 U.S. 418 (2009) .......................................................................................11

*Panetti v. Quarterman,*
  551 U.S. 930 (2007) .......................................................................................14

iii

*Pennsylvania Bureau of Correction,*
    474 U.S. 34 (1985) ....................................................................... 16

*Price v. Comm'r, Dep't of Corr.,*
    920 F.3d 1317 (11th Cir. 2019) ................................................... 16

*Rufo v. Inmates of Suffolk Cty. Jail,*
    502 U.S. 367 (1992) ..................................................................... 12

*United States v. Jackson,*
    691 F. App'x 595 (11th Cir. 2017) .............................................. 12

*United States v. Matthaei,*
    2020 WL 3268273 (D. Idaho June 16, 2020) ............................. 11

*United States v. New York Tel. Co.,*
    434 U.S. 159, (1977) ................................................................ 1, 15

*United States v. Woolley,*
    2020 WL 4904210 (S.D. Fla. Aug. 20, 2020)............................. 11

**State Cases**

*William Emmett LeCroy, Jr., v. United States of America,*
    2020 WL 5542483 (11th Cir. Sept. 16, 2020) ......................... 2, 1

**Federal Statutes**

18 U.S.C. § 3596(a) ............................................................... 3, 5, 13

18 U.S.C. § 3599....................................................................Passim

18 U.S.C. § 3599(a)(2) ...................................................................5

18 U.S.C. § 3599(c)........................................................................3

18 U.S.C. § 3599(c), (e)..................................................................3

28 U.S.C. § 1254............................................................................2

28 U.S.C. § 1292(a)(1) ................................................................1, 2

28 U.S.C. § 1651(a) ...............................................................Passim

28 U.S.C. § 2255.................................................................................1
Section 3599(c) ................................................................................3

Section 3599(e) .........................................................................3, 13

U.S. Const. amend. XIV..................................................................2

**State Statutes**

O.C.G.A. § 17-10-41 ..............................................................4, 5, 13

**Federal Regulations**

28 C.F.R. pt. 26 ..............................................................................9

28 C.F.R. § 26.................................................................................5
28 C.F.R. § 26.3(a)..........................................................................7

28 C.F.R. § 26.3(a)(1) ...................................................................10

28 C.F.R. § 26.4(b) and (c) .......................................................5, 13

58 Fed. Reg. 4898-01 (Jan. 19, 1993) .......................................9, 10

28 C.F.R. § 26.3(a)(1) ...................................................................10

## OPINIONS BELOW

The Eleventh Circuit Court of Appeals opinion in *LeCroy v. United States*, No. 20-13353, 2020 WL 5542483 (September 16, 2020), is Appendix A to this Petition. The unpublished opinion of the United States District Court for the Northern District of Georgia, *United States v. LeCroy*, No. 2:02-CR-RWS, 2:08-CV-RWS (N.D. Ga., Sept. 4, 2020), denying Petitioner's Motion to Reset or Modify Execution Date in Order to Implement Court's Order Appointing Counsel is Appendix B to this Petition.

## JURISDICTION

The judgment of the Eleventh Circuit Court of Appeals was entered on September 16, 2020 (*see* docket entry text 11th Cir. No. 20-13353) and rehearing was denied on September 22, 2020.  The order denying rehearing is Appendix C to this petition.

The district court had jurisdiction over the underlying habeas petition pursuant to 28 U.S.C. § 2255 and had jurisdiction to appoint counsel under 18 U.S.C. § 3599.  The circuit court of appeals had jurisdiction to consider the denial of the motion to reset execution date after construing it as a denial of a motion for stay of execution under 28 U.S.C. § 1292(a)(1).  In addition, the circuit court of appeals had jurisdiction to review the denial of a motion under the All Writs Act, 28 U.S.C. § 1651(a).  *See also United States v. New York Tel. Co.*, 434 U.S. 159, 172, (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction

1

otherwise obtained.").  This Court has jurisdiction to review these decisions under 28 U.S.C. § 1254.

## CONSTITUTIONAL PROVISIONS AND STATUTES INVOLVED

U.S. Const. amend. XIV.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

28 U.S.C. § 1292(a)(1) Interlocutory decisions.

"Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

2

28 U.S.C. §1651(a) of the All Writs Act.

Section 1651(a), "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

18 U.S.C. § 3596(a) of the Federal Death Penalty Act.

Section 3596(a), "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."

18 U.S.C. § 3599(c), (e) of the Federal Death Penalty Act.

Section 3599(c), "If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases."

Section 3599(e), "Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also

represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant."

O.C.G.A. § 17-10-41 Persons required to be present at executions.

"In addition, the convicted person may request the presence of his or her counsel, a member of the clergy, and a reasonable number of relatives and friends, provided that the total number of witnesses appearing at the request of the convicted person shall be determined by the commissioner of corrections."

## STATEMENT OF THE CASE

Petitioner, William LeCroy, was prosecuted in the Northern District of Georgia for capital murder.  (Doc 1).  He was convicted and sentenced to death. (Docs 472, 473, 474).  On May 25, 2007 the district court appointed undersigned counsel John R. Martin and Sandra Michaels to represent him in all post conviction proceedings. (Docs. 477, 478, 479).  Mr. Martin was appointed as lead counsel.  (Doc. 479).  In 2019, Stephen Ferrell of Federal Defender Services of Eastern Tennessee was appointed as additional counsel in support of previously appointed counsel.  (Doc 584).  The appointments were made pursuant to 18 U.S.C. § 3599, which, among other things, holds that Mr. LeCroy is entitled to assistance from his attorneys "throughout **every** subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings

4

and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(a)(2) (emphasis added).

Mr. Martin was diagnosed in 2010 with a form of leukemia that is believed to be caused by his exposure to Agent Orange during his service in Vietnam. (Doc. 593-1, Ex.1; Doc. 607, pp. 6-8). Although the condition is manageable, because of the worldwide pandemic of COVID-19, he is, on directions of his physician, unable to travel, and due to his severely compromised immune system, he should not be around groups of people. This serious health condition is thus compounded by the pandemic and could result in death or severe illness if Mr. Martin is exposed to and contracts COVID-19.

On August 1, 2020, the United States filed a "Notice Regarding Execution Date" advising that the Director of the Federal Bureau of Prisons ("BOP"), upon the direction of the Attorney General, has scheduled the execution of Appellant, in accordance with 28 C.F.R. § 26, to take place on September 22, 2020. Mr. LeCroy has specifically requested his long time lead attorney, Mr. Martin, be present at his execution. (Doc. 607, pp. 8-11). This is Mr. LeCroy's right under Georgia law which federal law requires to be followed at any execution and Bureau of Prison regulations. O.C.G.A. § 17-10-41; 18 U.S.C. § 3596(a); 28 C.F.R. § 26.4(b) and (c). Under the appointment pursuant to 18 U.S.C. § 3599(a)(2), Mr. Martin has a legal and ethical obligation to travel to Terre Haute, Indiana, where the execution is to occur to be present at the execution or to be present during the days leading up to his execution,

an obligation that is impossible for him to perform due to the extraordinary situation created by the pandemic.  (Doc. 607, pp. 6-11).[1]

In the District Court for the Northern District of Georgia, Mr. LeCroy's counsel filed a Motion to Reset the Execution date to a future date when lead counsel Martin would be able to travel and consult with Appellant and to be present at the execution until the extraordinary circumstances caused by the global COVID-19 pandemic have subsided.  (Doc. 593).  That court held a hearing but ultimately denied the Motion.  (Doc. 601).  In its opinion, the district court found that lead counsel's "wish to fulfill his professional and ethical obligation to his client, to honor LeCroy's request that he be present for the execution, are not only sincere but undoubtedly weighty."  The court further found that counsel's arguments were "compelling."  (*Id.* at p. 16).  However, the district court found it had no choice but to treat the motion as a motion for stay of execution and that, without a showing of a likelihood of success, it had no choice but to deny it.  (Doc. 601, p. 18).

Mr. LeCroy filed an appeal to Court of Appeals for the Eleventh Circuit.  After briefing, the panel denied relief, holding that "neither the district court nor this Court

---

[1] Petitioner also notes that there have been two deaths due to a recent outbreak of COVID-19 at U.S.P. Terre Haute.  Balsamo, Michael, *2 dead of virus at US prison where executions are scheduled*, Wash. Post (Sept. 15, 2020) https://www.washingtonpost.com/politics/2-dead-of-virus-at-us-prison-where-executions-are-scheduled/2020/09/15/b2b1ef12-f7a1-11ea-85f7-5941188a98cd_story.html;  ACLU, *FOIA Data Reveal Inadequate Testing and Precautions, Followed by COVID-19 Outbreak and Deaths*, Sept. 21, 2020, available at https://www.aclu.org/press-releases/bop-data-show-federal-executions-likely-caused-covid-19-spike.

6

has the authority to postpone LeCroy's execution—at least absent a demonstration that a stay is warranted." App. A, Opinion at 2a. On September 18, 2020, Petitioner then filed for Rehearing before the en banc court. This motion was denied by the panel on September 22, 2020. App. D, Order at 33a. He also filed a motion for stay of execution pending en banc review. This motion was denied by the panel. App. C, Order at 32a.

## REASONS FOR GRANTING THE WRIT

**A federal district court has the authority to reset or modify an execution date for a federally death-sentenced inmate in order to manage unforeseen exigent circumstances unrelated to the conviction or sentence and without considering the traditional factors for a stay of execution or injunction.**

While conceding that counsel's role in observing, advising, and comforting Mr. LeCroy on the eve of and during his execution is "undoubtedly weighty" and "compelling", (Doc. 601, p. 16), the district court nevertheless declined to reset the execution date so that counsel could be present. The court erroneously concluded that the Motion filed was in essence a motion for stay of execution. The court also ruled that it did not have the authority to change the date set by the Attorney General.

However, Mr. LeCroy asserts the district court has the authority to modify the date of the execution of Mr. LeCroy pursuant to 28 C.F.R. § 26.3(a) as well as under the All Writs Act, 28 U.S.C. § 1651(a). District courts traditionally retain residual authority to modify their orders as circumstances change. The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Here, there is no statute that addresses the issue of when a global pandemic prevents

7

meaningful representation of counsel pursuant to their legal obligations required by their appointment under 18 U.S.C. § 3599. The All Writs Act, however, empowers federal courts to fashion extraordinary remedies to enforce their orders when the needs arise and justice so requires and there is no other effective remedy.

Here, both the district court's residual authority and the All Writs Act allow the district court to address the extraordinary circumstances which exist due to the COVID-19 pandemic. The district court could either reset or continue the date of the execution to a time certain in the Spring of 2021 when the effects of the pandemic have subsided in order for counsel to fulfill their legal obligations to the Appellant during and prior to his execution. This case therefore raises an important issue of federal law which should be resolved by the Court especially in the context of a death sentence.

## I.  The District Court Must Retain Discretion to Modify Execution Dates in the Same Manner It Modifies Other Orders.

The circuit court affirmed the judgment of district court and improperly rejected LeCroy's argument by construing his modification request as a request for a stay of execution and stating that he failed to "identify any other source of authority—statutory, regulatory, or otherwise—that would empower the federal court to 'reset' or 'modify' his execution date." App. A, Opinion at 5a-6a. The court's misunderstanding of these two points led it to an erroneous conclusion.

First, the court failed to recognize that the authority for setting LeCroy's date in this case flows from the court, not the reverse. The court appeared to believe that the BOP set LeCroy's date of its own accord, independent and separate from the

8

power of the court. Thus the court required LeCroy to justify the district court's role in modifying the execution date. This misunderstands the law. The C.F.R. provisions cited by the panel do not "prescribe a role for the judiciary in setting execution dates." App. A, Opinion at 6a. The C.F.R.s, in fact, do the opposite: they purport to create a role for the BOP in setting a date.[2] The district court's authority is primary; the BOP's is derivative.

This Court need not take LeCroy's word on this; DOJ itself has explicitly admitted this. DOJ's rules for "Implementation of Death Sentences in Federal Cases"—the C.F.R.s cited by the panel and the basis for BOP's "notification" letter to LeCroy of his execution date—clearly show DOJ's understanding that BOP's authority to set an execution date is solely derivative of the long-standing power of the federal district court. *See* 58 Fed. Reg. 4898-01 (Jan. 19, 1993) (codified at 28 C.F.R. pt. 26).  For instance, in response to a comment during the rulemaking process suggesting that the implementation regulations were an improper delegation of congressional authority in violation of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,*

---

[2] The circuit court also asserted that "courts historically played some concurrent role in—had some shared responsibility for—setting execution dates in the first instance." App. A, Opinion at 7a. Though this was true until 1830, President Jackson, through his Attorney General, issued an order that the President would no longer set execution dates. J.N. Macpherson Berrien, 20 Op. Atty. Gen. 344 (1830). In the intervening decades, President Andrew Jackson's order remained controlling law and was incorporated into federal court practice. *See* Caleb Cushing, 7 Op. Atty. Gen. 561 (1855) ("Such is now the established practice. The court sentences, and fixes the day of execution; and unless the President interpose, the Marshal of the United States proceeds to execution in due time.").  This remains the law to this day and was only supplemented by the promulgation of the C.F.R.

*Inc.*, 467 U.S. 837 (1984), DOJ stated that no such problem existed because it was not based on congressional authorization at all:

> As for the Justice Department's "delegated authority," the Department does not need explicit authority to issue regulations establishing death penalty procedures. The Department is authorized *to rely on the authority of the federal courts*, **acting pursuant to the All Writs Act, 28 U.S.C. § 1651(a),** *to order* that their sentences be implemented. *Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.*

58 Fed. Reg. 4898-01, 4899-900 (emphasis added). In other words, the Department did not need Congress to delegate authority because its authority was derived from the sentencing court if and when that court gave it permission to act.

DOJ's responses to other comments made during rulemaking further demonstrate its recognition that its date-setting authority was not only derivative of, but also subordinate to, the federal district court. Not only was it abundantly clear that DOJ acknowledged that compliance with § 26.2 was necessary to avoid the Department's acting outside the scope of its legal power, it also accepted that its authority could be superseded by the district court:

> …*far from contemplating the unilateral exercise of executive authority…the proposed rule directs government attorneys to seek a court order directing that execution be by lethal injection, and at a date and place determined by the Department of Justice. § 26.2.* Indeed, the very provision the comments find an "invasion" of the prerogatives of the federal judiciary begin with the qualifying language, "Except to the extent a court orders otherwise * * *" § 26.3(a)(1). Section 26.4 also begins with that qualifier.

58 Fed. Reg. 4898-01, 4900 (emphasis added).

The text of DOJ's own rules and its articulated rationale for them thus represent an express recognition of the district court's firmly rooted, and exclusive, authority to implement death sentences. LeCroy did not need to identify another source of authority empowering the court to modify his execution date because the authority for that date was inherent in the court itself.

Second, because the setting of an execution date concerns implementation of the court's judgment, there is a distinct legal difference between a modification and a stay/injunction. The circuit court cited to language in *Nken v. Holder*, 556 U.S. 418 (2009) to hold that any judicial action "halting or postponing some portion of the proceeding" is a stay. App. B, Order at 17a-18a. But this is too narrow a reading. Immediately after the quoted language in *Nken*, this Court notes that a stay "achieves this result by temporarily suspending the authority to act…" *Nken*, 556 U.S. at 428-29. This makes sense; a stay of the mandate pending appeal, for example, suspends enforcement of a decision until further review. However, LeCroy did not request the suspension of "authority to act." Indeed, in this motion he did not contest the authority to act at all; he just asked the court to set the action on a different day. By any fair reading that is a modification, not a stay.

Indeed, other areas of the law bear out this distinction. After a defendant is convicted, the court may set a future date for self-surrender. Similar to LeCroy's situation, that means the imposition of a sentence of criminal judgment will occur on a later date. There is no question in such cases that the sentencing court has the authority to extend that self-surrender date without establishing the *Nken* stay

11

factors. *See e.g. United States v. Woolley*, No. 9:19-cr-80093, 2020 WL 4904210 at *1 (S.D. Fla. Aug. 20, 2020) (court "extended the self-surrender date to August 31, 2020"); *United States v. Matthaei*, No. 1:19-CR-00243-BLW, 2020 WL 3268273, at *1 (D. Idaho June 16, 2020) (court "extended self-surrender deadline 90 days due to concerns about impacts of COVID-19").

There are myriad other situations where a court may make modifications without being required to establish the stay factors. A court may modify a scheduling order for example. *See Harris v. Reverse Mortg. Sols. Inc.*, 800 F. App'x 708, 711 (11th Cir. 2020). Or it may modify a consent decree, *see Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992), or supervised release. *See United States v. Jackson*, 691 F. App'x 595, 596 (11th Cir. 2017). Or it may modify a protective order. *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 66 (11th Cir. 2013). Each of these situations "halt[s] or postpone[s] some portion of the proceeding" but they are not stays. The panel's failure to recognize this distinction was error.

II.     **The District Court Has the Authority Under the All Writs Act to Modify Appellant's Execution Date to Enforce Its Order Appointing Counsel.**

Even if a court were to construe Mr. LeCroy's motion in the district court as a motion for injunctive relief, it must consider that motion under the All Writs Act, 28 U.S.C. § 1651(a), (the AWA). When a movant requests that an execution date be reset due to extraordinary circumstances that prevent appointed counsel from fulfilling his role at that time, the AWA allows the district court to fashion relief to meet the ends of justice so that its order appointing counsel may be given full effect.

12

Ensuring counsel's ability to carry out their duties during the execution was entirely within the district court's jurisdiction pursuant to its lawful order of appointment. The district court unquestionably has authority to appoint counsel to represent a death-sentenced inmate through execution of sentence. The AWA gives the court the authority to modify Mr. LeCroy's execution date so that counsel may fully comply with the appointment order when extraordinary circumstances impede appointed counsel's ability to fulfill their duties. This is because, under the AWA, the district court is permitted to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The district court's erroneous conclusion that it lacked this power needs to be redressed.

Congress has provided for the statutory right to counsel in death penalty cases. 18 U.S.C. § 3599. "On its face, this statute grants indigent defendants a mandatory right to qualified legal counsel." *McFarland v. Scott*, 512 U.S. 849, 854 (1994). Under this statute, the district court appointed John Martin as lead counsel. This appointment under the statute explicitly includes clemency proceedings. 18 U.S.C. § 3599(e). At the present time, clemency proceedings are ongoing and may only be resolved shortly before execution. In addition, Georgia law and BOP regulations provide for the presence of counsel at a condemned inmate's execution. O.C.G.A. § 17-10-41; 18 U.S.C. § 3596(a); 28 C.F.R. § 26.4(b) and (c).

This right to counsel includes counsel's presence at the time of execution because there are still legal proceedings ongoing. Counsel's presence at the execution

13

is not merely for emotional support of the prisoner, it is one of his appointed duties because he will ensure that it is carried out according to law.  First, counsel has a duty to ensure that their client is mentally competent to proceed with execution.  *See Panetti v. Quarterman*, 551 U.S. 930, 935-36 (2007) (Eighth Amendment prohibits execution of inmate who is incompetent, even if earlier assessments found him competent).  This requires some personal interaction between counsel and their client.  Second, counsel's presence is necessary in protecting their client's First Amendment rights to access to religious counseling and services, as well as ensuring that he is allowed to express himself in his last wishes and final words.  And finally, counsel's presence at the execution is necessary in case potential legal violations occur.  In a botched 2014 execution, for example, the presence of counsel was critical to the prisoner's gaining access to the courts through an emergency petition when the execution drugs failed to bring about death, leaving him gasping for air for nearly two hours.[3] For all of these reasons, counsel's ability to be present physically with their client is absolutely necessary in fulfilling the obligations the district court appointed them to do.

Despite counsel's inability to fulfill these duties, the district court erroneously held that the AWA did not give it the authority to move the execution date unless Mr.

---

[3] *See* Mark Berman, *Arizona execution lasts nearly two hours; lawyer says Joseph Wood was 'gasping and struggling to breathe,'* Wash. Post (July 23, 2014), https://www.washingtonpost.com/news/post-nation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/.

14

LeCroy could make a showing that a stay or injunction is warranted.  App. B, Order at 26a (citing *Dunn v. McNabb*, 138 S. Ct. 369 (2017)).  However, the All Writs Act provides the flexibility for a court to order appropriate relief where extraordinary circumstances call for its application and no other form of relief is available.

The AWA is the proper vehicle for granting the relief requested by Mr. LeCroy because he did not premise that request on the resolution of some other legal proceeding.  "Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction."  *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1100 (11th Cir. 2004).  Thus, the AWA codifies the "federal courts' traditional, inherent power to protect the jurisdiction they already have."  *Id.* at 1099.  In this case, the jurisdiction the court would be protecting through the AWA is its authority to appoint counsel under 18 U.S.C. § 3599.

This Court has interpreted the AWA to authorize a federal court to "issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. N.Y. Tel. Co.,* 434 U.S. 159, 172 (1977).  Ensuring counsel's ability to carry out their duties during the execution was entirely within the district court's jurisdiction pursuant to its lawful order of appointment.

The circuit court erroneously relied on decisions where a movant was asking for a stay of execution in order to litigate other claims to deny relief under the AWA. App. A, Opinion at 6a-8a.  However, the cases relied on by that court are readily

distinguishable because the injunction requested was much more like a traditional injunction than an operation of the AWA. In each of these cases, the moving party needed to show a "likelihood of success" on some other issue. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) (inmate challenging method of execution must satisfy the requirements for a stay); *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (same); *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (same).

Authority under the AWA would be appropriately exercised here because Mr. LeCroy has no other remedy at law. The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law. *See, e.g., Carlisle v. United States,* 517 U.S. 416, 429 (1996) ('The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute" (quoting *Pennsylvania Bureau of Correction,* 474 U.S. 34, 43 (1985))). *See also* 19 Moore's Federal Practice § 201.40 ("[A] writ may not be used ... when another method of review will suffice"); *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999).

Mr. LeCroy's motion fit squarely into this category of requests because he had no other remedy available. He could not obtain a stay because he could never show "a likelihood of success on the merits" when there are no disputed merits to be resolved. There is no alternative remedy for the district court to protect its authority to ensure that appointed counsel may effectively carry out their duties. For this reason, the district court had jurisdiction to reset Mr. LeCroy's execution date under the AWA. Its holding that it did not, must be reviewed by this Court and overturned.

16

17

## CONCLUSION

Based on the factual and legal contentions herein, the Defendant respectfully requests that the Court grant this Petition for Writ of Certiorari, and that it Stay Mr. LeCroy's execution, in order to give these issues plenary consideration.

This 22nd day of September, 2020.

Respectfully submitted,

BY:    /s/ John R. Martin
John R. Martin
1099 St. Louis Pl
Atlanta, Georgia 30306
Ph: (404) 433-7446
jack@martinbroslaw.com

/s/Sandra Michaels
Sandra Michaels
965 Virginia Avenue NE
Atlanta, Georgia 30306
Ph: (404) 312-5781
SLMichaelsLaw@gmail.com

/s/Stephen Ferrell
Stephen Ferrell
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN  37929
Ph: (865) 637-7979
Stephen_Ferrell@fd.org

*Attorneys for Petitioner LeCroy*

18